WESTERN UNION TELEGRAPH COMPANY *v.* DUKE.

Opinion delivered April 14, 1913.

1. TELEGRAPH COMPANIES—DUTY TO TRANSMIT MESSAGE.—While a telegraph company does not insure the prompt transmission of messages, it is required to exercise ordinary care, and it will not be liable for failure to transmit and deliver a message between the hours upon which its offices are closed upon a national holiday. (Page 11.)

2. EVIDENCE—WEIGHT AND SUFFICIENCY A QUESTION FOR JURY.—In an action against a telegraph company for damages for failure to deliver a message promptly, when the issue before the jury is the question of defendant's negligence in handling the message, the jury has the right to consider the evidence in its most favorable light to the plaintiff. (Page 11.)

3. TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE PROMPTLY—EVIDENCE SUFFICIENT TO SUPPORT VERDICT.—In an action for damages against a telegraph company for failure to deliver a message promptly, the evidence held sufficient to warrant the jury in finding that if defendant had used ordinary care in transmitting the message, that the plaintiff could have reached her daughter's bedside before the death of the daughter. (Page 13.)

4. NEW TRIAL—SUFFICIENCY OF ASSIGNMENT OF ERROR.—In a motion for a new trial the defendant assigned as a ground therefor that "the court erred in admitting evidence over defendant's objection, as shown by the defendant's exceptions made and entered of record." *Held* assignment of error too indefinite to call the court's attention to the particular error complained of. (Page 14.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; affirmed.

STATEMENT BY THE COURT.

This was an action brought by Mrs. Mollie Duke against the Western Union Telegraph Company to recover damages on account of mental anguish sustained by reason of the negligence of the defendant in failing to deliver a telegram to her notifying her of the serious illness of her daughter, in consequence of which plaintiff failed to reach the bedside of her daughter before she died.

The plaintiff resided at Hope, Arkansas, and her daughter at Camden, Arkansas. These towns are about sixty-five miles apart, and have railroad and telegraph

connections. A train leaving Hope at 3:00 o'clock P. M. makes connection with the train leaving Stamps at 8:30 P. M., and arrives at Camden at 10:10 P. M. On the 25th day of December, 1911, Whitfield Hamilton, the husband of the plaintiff's daughter, sent to the defendant's office at Camden for immediate transmission a telegram to the plaintiff, reading as follows:

"Mrs. Mollie Duke, Hope, Arkansas:
    "Stella not expected to live.
                                  (Signed) "Whitfield."

The city office was closed on account of it being a holiday between the hours of 10:00 A. M. and 4:00 P. M. The manager of the city office directed the bearer of the message to take it to the depot and send it from there. The message shows, on its face, that it was received at the depot for transmission at 11:29 A. M. on Christmas day. The answer of the defendant admits that it was received by the defendant at this time and the price paid for sending same. Another paragraph of the answer avers that the defendant promptly transmitted said message after receiving it to the relay station at Little Rock, but alleges that it could not be forwarded to Hope for the reason that defendant's only office at Hope was closed between the hours of 10:00 A. M. and 4:00 P. M. on account of it being a holiday.

Whitfield Hamilton admitted that he knew the office at Camden would be closed between the hours of 10:00 A. M. and 4:00 P. M. on Christmas day, but said that he did not think of this when he sent the message. The message was not delivered to the plaintiff until a few minutes after 7:00 o'clock P. M. on Christmas day. She left the next morning at 7:00 o'clock on the first train for Camden. Her daughter died at about 4 o'clock A. M. on December 26, and the plaintiff had received news of that fact before she started. The city of Hope is twenty-three miles from the town of Stamps. A witness for the plaintiff testified that he had traveled from Hope to Stamps in a buggy in two hours and thirty-eight minutes. That he left Hope at 9:18 and arrived at Stamps

at four minutes to 12. The plaintiff testified that had she received the message in time to have driven through the country to catch the train at Stamps, she would have done so. That her neighbors were very kind to her and would have helped her to get off at any minute.

The abstract of defendant shows that Mr. Herrin testified: On last Christmas day I was wire chief for the Western Union Telegraph Company, stationed at Little Rock, Arkansas. My duties were to look after the wires—take care of the wires and make necessary patches. I remember about a message arriving at Little Rock from Camden on Christmas day—the message in controversy. I don't remember the time it came to Little Rock; I just saw it. The Little Rock office was open with a reduced force; the message was going to Hope, and that office was not supposed to be open until 4 o'clock. When we got the message we called the Hope office; then we called Hope office at 4 o'clock and on up to 5 o'clock, when we discovered the wire was cut. It was 5 o'clock before we discovered that we could not get Hope office. The wire was grounded—broken in two between Gurdon and Prescott. We located the trouble about 5 o'clock. We then got the message through by Texarkana, around by Dallas; had to go a roundabout way to get it to Hope. We used every way in the world we knew how to ascertain the cause of the trouble with the wire. Such breaks often occur; there is no way they can be foreseen or anticipated. It is impossible to tell when or where a wire will get out of order. We tried to get the depot at Hope. The message was gotten off to Hope about 5:30."

The manager of the defendant company's office at Hope testified that the message in question reached her office at about 5:45 o'clock P. M. That without delay she sent a boy out to deliver it along with other messages. That the office closed at 6 o'clock P. M. and the boy had not returned at that time, and that she does not know at what time he delivered the message to the plaintiff. The testimony on the part of the plaintiff showed that she

resided only a short distance from the telegraph office and within its delivery limits. That the message was not delivered to her until a few minutes after 7 o'clock. Other facts will be stated and referred to in the opinion.

There was a verdict and judgment for the plaintiff, and the defendant has appealed.

*Geo. H. Fearons, Chas. S. Todd* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*McMillan & McMillan,* for appellee.

HART, J., (after stating the facts). At the outset, it may be said that in the case of *Western Union Telegraph Company* v. *Bickerstaff,* 100 Ark. 1, the court held:

"A telegraph company does not insure the prompt transmission of messages; it is required to exercise ordinary care, and is liable only for a failure to transmit as promptly as is reasonably practicable under all the existing circumstances."

It is earnestly insisted by counsel that the court should have given a peremptory instruction in favor of the defendant. It was admitted that the telegraph offices at both Camden and Hope were closed on Christmas day between the hours of 10:00 A. M. and 4:00 P. M., and that the sender of the message knew of this fact. Therefore, the trial court ruled that the issue of negligence in this case would be confined to the question of whether the defendant was guilty of negligence in handling the message after 4 o'clock P. M. In determining this question, the jury had a right to consider the evidence in its most favorable light to the plaintiff. It is true that Herrin, the wire chief of the defendant company at Little Rock, testified that they attempted to send the message from Little Rock to Hope at 4 o'clock P. M., the time at which the office at Hope would be open on Christmas day. He also says that they made attempts for an hour to get the message through, and it was not until 5 o'clock or after that they discovered there was trouble with the local wire to Hope. They afterward sent the message around by Dallas and back to Texarkana to Hope. The manager of the defendant's office at Hope states that the message was

received there at about 5:45 P. M.   It will be noted, however, that the defendant, in its answer, admitted that the message was received at Camden, and promptly transmitted to Little Rock and was received there before 4 o'clock P. M.   This fact may also be inferred from the testimony of Mr. Herrin, for he says, "When we got the message we called the Hope office; then we called the Hope office at 4 o'clock and on up to 5 o'clock, when we discovered the wire was cut."   At the close of his cross examination we quote from his testimony as follows:

Q.   You had no trouble in locating the right wire—the trouble was on the local wire?

A.   Yes, sir.

Q.   And you located it?

A.   Yes, sir; in about thirty minutes.

Hence, the jury might have inferred that he discovered at 4:30 o'clock P. M. that he could not send the message to Hope over the local wire.   We again quote from his testimony, as follows:

Q.   You say you tried to get Hope at 4 o'clock and didn't succeed?

A.   Yes, sir.

Q.   And didn't succeed in getting them until 5 o'clock?

A.   We didn't succeed in getting them until 5:30.

Q.   Well, when you couldn't get them, didn't you know that either one or two things was wrong, either the wire was out of order or the operator wasn't in his office?

A.   Well, there was something wrong, but we have lots of wires up there—

Q.   But you didn't get Hope, did you?

A.   No, sir.

Q.   It was an hour or more before you got Hope?

A.   Yes, sir.

We, also, quote from his direct examination as follows:

By Mr. Todd (counsel for defendant):

"We offer it (referring to the date showing the

exact time the message was sent), if your Honor please, to show the time of sending."

By Mr. McMillan (counsel for plaintiff) :

"I object to it as hearsay testimony."

By the Court:

"The witness has already stated that the message was sent at 5:30."

The manager of the office at Hope testified that it was received there at about 5:45 P. M. And a witness for the plaintiff testified that ten minutes would have been a reasonable time in which to have delivered the message to the plaintiff. Therefore, the jury were warranted in finding that twenty-five or thirty minutes was a reasonable time in which to have transmitted the message around by Dallas, and have delivered it to the plaintiff after it was received at Hope. Then, if the defendant company located the trouble on the local wire to Hope within half an hour, and if an additional thirty minutes was a reasonable time within which to have sent the message around by Dallas and delivered it to the plaintiff, the jury were warranted in finding that the message should have been delivered to the plaintiff at 5:00 P. M. She testified that had she received the message she would have immediately driven through the country from Hope to Stamps, a distance of twenty-three miles. A train left Stamps for Camden at 8:30 P. M. and arrived at Camden at 10:10 P. M. This would have given plaintiff three and one-half hours in which to travel from Hope to Stamps. A witness for the plaintiff testified that he had made the trip in a buggy in two hours and thirty-eight minutes, and it is not unreasonable that the plaintiff might have procured a conveyance and have traveled the distance in three and one-half hours.

Therefore, we are of the opinion that from the facts and circumstances adduced in evidence in the instant case, the jury could have reasonably inferred and were warranted in finding that if the operator at Little Rock had used ordinary care in transmitting the message from Little Rock to Hope at 4 o'clock, the plaintiff could have

reached the bedside of her daughter shortly after 10 o'clock P. M. on Christmas day, and would have been with her daughter several hours before she died.

One of the grounds of the defendant's motion for a new trial is that "the court erred in admitting evidence over defendant's objection as shown by the defendant's exceptions made and entered of record." In the case of *McClintock* v. *Frolich,* 75 Ark. 111, the court held:

"A motion for new trial on the ground 'that the court erred in admitting evidence on the part of the defendant which was excepted to at the time by the plaintiff,' without naming the witness or pointing out the evidence is too general, and does not present any question for consideration."

Again, in the case of *Miller* v. *Nuckolls,* 77 Ark. 64, the court held:

"A ground for new trial because of errors of law in admitting evidence, 'as shown by the stenographer's transcript thereof,' is too indefinite to call the court's attention to the particular error complained of."

Therefore, it will be seen that the attention of the court was not called in the motion for a new trial to the particular error complained of in the admission of evidence, and the assignment is too indefinite.

The court expressly limited the right of the plaintiff to recover to negligence on the part of the defendant after 4 o'clock P. M. Therefore, there was no error in refusing to give defendant's instruction numbered 2 on the question of contributory negligence.

No argument is made by counsel in their brief to reverse the judgment because the verdict is excessive, and the judgment will be affirmed.