WESTERN UNION TELEGRAPH COMPANY v. SCANLON.

Opinion delivered December 7, 1914.

1. EVIDENCE—DEPOSITION—NONRESIDENT WITNESS.—A witness who resides in a county other than that in which a cause is to be tried, can not be compelled to attend, and the party desiring his testimony has the right to take the witness's deposition.

2. CONTINUANCES—DEPOSITIONS—NOTICE—In an action against a corporation, plaintiff served upon an agent of the corporation a notice to take the deposition of a witness in a county other than that where the cause was pending The agent neglected to give the notice to the corporation's attorney. Held, when the deposition was taken pursuant to the notice, and defendant's counsel had no knowledge thereof, until after he announced ready for trial, it is not an abuse of the trial court's discretion to refuse a prayer for a continuance offered by counsel for the defendant.

3. EVIDENCE—ADMISSIONS OF AGENT.—In an action against a telegraph company for damages for failure to deliver a death message promptly, evidence of a written statement made by the person delivering the message addressed to the plaintiff, on the ground that he was plaintiff's agent, held inadmissible, as the statement was made after the termination of the agency.

4. TELEGRAPH COMPANIES—DEATH MESSAGE—FAILURE TO DELIVER PROMPTLY.—Where a telegraph company's transmitting agent knows, or under the circumstances should know, that the receiving office being closed there will be delay in delivering an urgent message which is intended for immediate delivery, it is incumbent on him to so inform the sender; and if the agent fails to do this the company is liable for the damages resulting from the neglect.

5. TELEGRAPH COMPANIES—FAILURE TO DELIVER DEATH MESSAGE—DAMAGES—AMOUNT.—The amount of damages recoverable, in actions against telegraph companies for failure to deliver important messages, will depend upon the facts in each individual case; and when plaintiff was prevented from attending the funeral of her sister, a judgment for five hundred dollars damages will be reduced to two hundred and fifty dollars.

Appeal from Hempstead Circuit Court; *Jacob M. Carter* Judge; modified and affirmed.

*George H. Fearons* (of New York), *Chas. S. Todd* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. A continuance should have been granted on the showing made. The court abused its discretion in refusing. 67 Ark. 142; 85 *Id.* 334; 94 *Id.* 350.

2. Hearsay evidence is admissible when not objected to.

3. Request No. 6 should have been given. Doctor Thompson knew it was Sunday and that the Hope office was closed.

4. Instruction No. 1 for plaintiff was a mere dissertation on the *weight* of the evidence and prejudicial. 56 Ark. 242; 68 *Id.* 336; 82 *Id.* 540; 103 *Id.* 538.

5. The verdict is excessive. *W. U. Tel. Co.* v. *Blake,* 113 Ark. 545; 90 Ark. 457; 106 *Id.* 117; 84 *Id.* 457.

*Steve Carrigan, Jr.,* for appellee.

1. The continuance was properly refused. No diligence was shown and proper notice was not given. 20 S. E. 382; 101 Ark. 514; Kirby's Dig., § § 3167, 6271-4; 103 Ark. 543.

2. Instruction No. 1 for plaintiff states the law. 103 Ark. 538; 17 Cyc. 766, and note; 37 *Id.* 580; 174 Mass. 580; 99 Ark. 76.

3. There is no error in request No. 6. 91 Ark. 602; 168 S. W. 1133; 91 Ark. 602. Where the lines of a telegraph company are not in working order or offices closed, it is the duty of the company to notify the sender of a message. Gray on Com. by Telegraph, § 18; 66 Fed. 899; 129 Fed. 318; 19 S. W. 149, and cases *supra.*

4. Hearsay testimony is not admissible. Kirby's Dig., § 3134; Jones on Ev., § 173; 24 Wend. 105; Thompson on Trials, p. 316.

5. Verdict not excessive. 159 S. W. 909; 100 Ark. 8; 84 Ark. 457; 98 Ark. 88-92.

HART, J.   M. V. Scanlon instituted this action against the Western Union Telegraph Company to recover damages on account of the negligent delay of the company in transmitting and delivering to her the following telegram: "Mrs. M. V. Scanlon, Hope, Ark.: Mrs. Sheppard died at 7 p. m. (Signed) Doctor Thompson." The message was written by Doctor Thompson on Sunday evening, June 29, 1913.   Mrs. Sheppard died at Stephens, Arkansas, and Doctor Thompson testified that he delivered the message to Mr. Griffin, agent of the company, at Stephens, at 8 o'clock or 8:30 o'clock P. M. of that day; he testified that Griffin did not say anything about the message except that he would get it through right away; that Griffin did not inform him that the telegraph company did not maintain a night office at Hope, Arkansas, and that the message could not be delivered to Mrs. Scanlon that night; that Mrs. Sheppard was buried about five o'clock on the evening of the 30th of June, and that the body could not be embalmed at Stephens, and, therefore, could not have been kept any longer; he further stated that if he had known that the message could not have been got through that night that he would have got Mrs. Scanlon over the telephone and notified her of the death of her sister.

It was shown by other evidence that the message could have been delivered over the telephone that night.

Mrs. Scanlon, the plaintiff, testified that she knew that her sister had been sick, had been with her in her sickness and had helped to wait on her for eighteen or twenty days; that she was called home on account of the illness of her daughter and did not return; that the message in question was not delivered to her until between 9 and 10 o'clock of the morning after it was delivered to the agent of the company at Stephens for transmission; that Stephens is in Ouachita County and Hope in Hempstead County, Arkansas; that the two towns are about sixty miles distant; that if the message had been delivered to her on the night of the 29th she could have gone on the train which left Hope at 8 o'clock the next morn-

ing and would have arrived in Stephens in time for her sister's funeral, and that she would have done so; that she had great affection for her sister and was very much grieved in not being able to attend her funeral.

T. C. Griffin testified: That on June 29, 1913, he was agent for the Western Union Telegraph Company at Hope, Arkansas; that he remembered distinctly Doctor Thompson's giving him the message in regard to the death of Mrs. Sheppard; that it was delivered at 8:30 o'clock on Sunday night, and that at that time the operators of the company are off duty except in the relay stations; that he tried to get Little Rock and found that they had wire trouble; that he told Doctor Thompson that he had better use the telephone because he could not get Little Rock or any relay office on the circuit; that Doctor Thompson told him that he was in a hurry, and that if he could not get the message off by 8 o'clock next morning he would use the telephone; that he told Doctor Thompson that it was not possible to deliver the message at Hope that night; that it couldn't be delivered until the next morning because the office at Hope closed at 6 o'clock P. M.

Other evidence for the telegraph company showed that the office at Hope is closed from 8 o'clock at night until 8 o'clock next morning, and that on Sundays the office is opened at 8 o'clock A. M. and is closed at 10 o'clock A. M. and then is opened again at 4 o'clock P. M. and is closed at 6 o'clock P. M.

The jury returned a verdict in favor of the plaintiff for $500 and the defendant has appealed.

The principal ground relied upon by counsel for the defendant for a reversal of the judgment is that the court refused the defendant a continuance on account of surprise at the testimony of Doctor Thompson. The suit was brought in the Hempstead circuit court and set for trial at the October term, 1913. When the case was called, Doctor Thompson, the sender of the message in question, was in attendance upon the court at the instance of the plaintiff, and the plaintiff announced ready for trial and

the defendant sought a continuance on account of the absence of T. C. Griffin, the agent of the defendant to whom the message was delivered for transmission, and the cause was continued until the April, 1914, term of the court. Counsel for the plaintiff gave notice to the defendant that it would take depositions of witnesses on the 12th day of November, 1913, at Stephens, Arkansas, and this notice was served upon an agent of the company on the 3d day of November, 1913, but no notice of the taking of the depositions was given to the attorney of the defendant, who resided at Texarkana, Texas. It is not contended that the notice was not regular in form or that it was not served upon the proper agent of the plaintiff, and on that account the notice need not be set out. Pursuant to the notice the deposition of Doctor Thompson and that of another witness, both of whom resided at Stephens, Arkansas, was taken on the 12th day of November, 1913, and the duly transcribed depositions were transmitted to the circuit clerk of Hempstead County.

On the 12th day of March, 1914, some three weeks before the April term of the court convened, the attorney for the defendant wrote the clerk of the circuit court requesting him to send to him all the papers in the case. The clerk replied that the case would be called for trial on April 7, 1914, and advised the attorney that the judge of the circuit court had made an order forbidding the clerk to send any original papers out of the office. About the 17th day of March the attorney for the defendant received a letter from the attorney for the plaintiff advising him of the setting of the case and about the 24th of March he received another letter from the plaintiff's attorney enclosing copy of an amendment to the complaint.

The attorney for the defendant testified that he never had any notice whatever that the deposition of Doctor Thompson would be taken or had been taken. He arrived at the county seat of Hempstead County on the day before the case was set for trial at the April, 1914, term of the court, and procured from the clerk what purported to be all the papers in the case and took them to his hotel

to examine them that night. He stated that he did not find the deposition of Doctor Thompson or that of any other witness among the papers. He announced ready for trial on the presumption that Doctor Thompson would be present in court to give his testimony. After the jury had been empaneled and the plaintiff had been examined as a witness, plaintiff's attorney offered to read in evidence the deposition of Doctor Thompson. The attorney for the defendant then asked leave of the court to withdraw his announcement of ready for trial and moved to postpone the trial of the case until he could secure the presence of Doctor Thompson or have an opportunity to cross examine him. The court denied his motion. Attorney for the defendant then offered to read in evidence in rebuttal of Doctor Thompson's testimony a written statement signed by him which had been given to one of the agents of the defendant and which tended to contradict the testimony given in his deposition. The court denied this motion and the case proceeded to trial.

We do not think the court abused its discretion in refusing to grant the defendant's motion for a continuance or postponement of the trial. It will be noted that the case was tried in Hempstead County, Arkansas, and that the deposition of Doctor Thompson was taken in Ouachita County, where he resided. It is true that Doctor Thompson appeared as a witness for the plaintiff at the time the case was set for trial at the preceding term of the court as a witness. But he could not have been compelled to attend the trial as a witness because he did not reside in the county where the action was pending or in an adjoining county. See Kirby's Digest, § 3157.

It is conceded by counsel for the defendant that notice to take depositions was served upon the proper agent of the defendant on the 3d day of November, 1913, and that pursuant to the notice the deposition of Doctor Thompson was taken on the 12th day of November, 1913, and duly transmitted to the clerk of the court in which the action was pending and published. Counsel for the plaintiff was not required to notify counsel for the de-

fendant that he was going to take the deposition of Doctor Thompson; it was sufficient to give due notice that the deposition would be taken. It appears from the record that the agent upon whom the notice was served failed to send it to the attorney for the defendant and on that account the attorney for the defendant did not know that the deposition would be taken. This amounted to negligence, and the court did not abuse its discretion in failing to continue the case as requested by counsel for the defendant.

(1-2)    For the reason that the attendance of Doctor Thompson at the trial could not have been compelled, the plaintiff had a right to take his deposition. This her attorney proceeded to do upon due and proper notice to the defendant. It is true it was through no fault of the defendant's attorney that he did not know that the depositions had been taken, but it was the fault of the defendant's agent upon whom the notice was served, and for this agent's negligence the defendant must suffer and had no right to have the case postponed on account of its own agent's negligence.

(3)    Again it is insisted by counsel for the defendant that the court should have permitted him to introduce in evidence the written statement which he says was given by Doctor Thompson to one of the defendant's agents in which he made statements tending to contradict the testimony given in his deposition. Counsel claims that this written statement made by Doctor Thompson was in the nature of an admission binding upon the plaintiff, because Doctor Thompson was the agent for the plaintiff in sending the message. But after that was done, his agency ceased and no admission made by him thereafter could be binding upon the plaintiff.

It is next contended by counsel for the defendant that the court erred in refusing instruction No. 6, which is as follows: "If you believe from the evidence that at the time he tendered the message, Doctor Thompson knew that it was Sunday, and that Hope office was closed, you will find for the defendant."

We do not think the court erred in refusing to give this instruction. It was erroneous, because it denied a recovery if the jury found that at the time Doctor Thompson tendered the message to the company he knew it was Sunday and that the Hope office was closed. The instruction in this form did not take into consideration the testimony of Doctor Thompson to the effect that the agent received the message and stated to him that he would send it immediately.

In the case of *Western Union Tel. Co.* v. *Duke,* 108 Ark. 8, it was admitted that the telegraph office, both at the place where the message was delivered for transmission and the place where it was to be sent, were closed at the time the message was tendered for transmission on account of it being a holiday, and that the sender of the message knew of this fact. We held that the circuit court properly ruled that the issue of negligence would be confined to the question of whether the defendant was guilty of negligence in handling the message after the hour at which the sender of the message knew that the office would be reopened for business. There no point was made that the agent received the message and undertook to send it regardless of whether the office was closed or not.

(4) In the present case, Doctor Thompson testified that he was not informed that the company did not have a night office at Hope, Arkansas, and that the message could not be delivered that night. He stated that he delivered the message to the operator with instructions to transmit it immediately and that the operator agreed to do so. It is true that his testimony in this respect is contradicted by that of the telegraph operator, but this conflict of evidence was properly submitted to the jury under the instruction given by the court.

In the case of the *Western Union Tel. Co.* v. *Harris,* 91 Ark. 602, the court held that the agent of a telegraph company to whom a message is offered for transmission is bound to take notice of the office hours of the company at the office to which the message is to be sent. The court held, further:

"Where a telegraph company's transmitting agent knows, or under the circumstances should know, that on account of the receiving office being closed, there will be delay in delivering an urgent message which is intended for immediate delivery, it is incumbent on him to so inform the sender; and if he fail to do so, the company is liable for damages resulting from such neglect."

The instructions given by the court in the instant case followed the law laid down in that case, and after examining them, we are of the opinion that it may be said, without further discussion, that they fully and fairly presented the issues of fact to the jury.

(5)   Finally, it is contended by counsel for the defendant that the verdict is excessive, and in this contention we agree with them. The counsel for plaintiff rely on the case of *Western Union Tel. Co.* v. *Webb,* 98 Ark. 88. In that case a son sued to recover, because, by the negligence of the telegraph company, he was not able to be present and assist in burying his mother. The love between mother and son is greater than that between brother and sister, and on that account greater damages are usually allowed in that class of cases. Every case must depend to a great extent upon the facts presented in it, and though, in some measure, like amounts should be allowed in similar cases, still the individual facts presented in each case must to a great extent govern. In the present case it was shown that the plaintiff had been with her sister a short time before, and had helped nurse her for about twenty days, and had rendered her every assistance it was possible for her to do. It was shown that the funeral could not have been delayed any longer because there was no way at Stephens by which the body could have been embalmed. The plaintiff could have done no more than be present at the funeral had she received the message promptly. Under all the circumstances as shown by the record, we think a verdict of $250 was all she was entitled to recover. Therefore, the judgment will be reduced to the sum of $250, and for that amount will be affirmed.