## WARD v. STATE.

### Opinion delivered January 27, 1908.

1. WITNESS—EXAMINATION.—It was not improper to permit the prosecuting attorney, in examining a hostile witness, to say to him that if he swears to something wrong he is liable to go to the penitentiary. (Page 183.)

2. TRIAL—REMARK OF COURT.—Where the prosecuting attorney, in examining a hostile witness, was permitted to say to him that if he swore falsely he was liable to go to the penitentiary, it was not error for the court, in overruling defendant's objection to such statement, to say that the prosecuting attorney "has a right to get the truth." (Page 183.)

3. HOMICIDE—DYING DECLARATION.—A statement, in a murder case, made by the deceased when he was dying and when his language indicated that he realized his condition, is admissible to show the circumstances of his killing. (Page 184.)

4. INSTRUCTIONS—CONSTRUCTION.—The court's instructions should be considered as a whole. (Page 184.)

5. NEW TRIALS—NEWLY DISCOVERED EVIDENCE.—Motions for new trial on the ground of newly discovered evidence are addressed to the legal discretion of the judge; and it is only in case of apparent abuse of that discretion or of injustice that the appellate court will interfere. (Page 184.)

6. SAME—SHOWING OF DILIGENCE.—A motion for new trial upon the ground of newly discovered evidence was properly overruled, although the applicant states that he did not know of this testimony at the time of the trial and could not by reasonable diligence have known it, if he fails to state the acts done which are denominated reasonable diligence and the facts and circumstances under which such newly discovered evidence came to his knowledge. (Page 185.)

Appeal from Lee Circuit Court; *Hance N. Hutton,* Judge; affirmed.

### STATEMENT BY THE COURT.

The grand jury of Lee County indicted Henry Ward for the crime of murder in the first degree. He went to trial under a plea of not guilty, and was convicted of murder in the second degree, and his punishment assessed at 21 years in the penitentiary.

The following testimony was adduced at the trial:

Isaac Hicks: "I was at home on the day that George Fields was killed by Henry Ward in front of my house. The night before me and Mr. Caleb Johnson, Henry and George Fields were at my home, and a crap game was going on. Fields and Buster had a fuss over a nickel. When I say Buster, I mean Henry Ward. They made up that night, and Caleb and George went home. The next morning George Fields came by the house, and stopped and said he wanted to fight. I did not testify before that Buster called him. Myself and my mother live with the defendant. Fields told him he wanted to fight, and Buster said, 'All right;' and he went out there, and Fields cut him. Buster ran back in the house, and George Fields came right on; and Mr. Buster said, "Don't you come in here." And Mr. Fields said, "Go back, you coward son of a bitch," and Mr. Buster shot him.

"Q. Don't you know what is likely to happen to you to swear something wrong; that you are liable to go to the penitentiary? (Objected to by defendant.) Court: "He has a right to get the truth." (To which remark defendant objected as being prejudicial and excepted.) "Mr. Smith has talked to me, but he told me to swear the truth."

Q. "Why did you tell me yesterday that Buster stopped this man and hit him, and that he got down off his horse, and that Buster picked up the hoe and then he——

A. "No, sir; I never told you that about the hoe.

Q. "Well, the balance of it is true?"

A. "It is true just like I told it."

Annie Hicks: I and my little boy and Caleb Johnson and Buster and George Fields were at my house the night before the killing. They were shooting craps. I live with Henry Ward, but am not married to him. They had a little fuss over the crap game. They got to fussing about a ring. George got up and drew his knife on Buster. There was no fight, and they went home after the fuss. I saw the killing the next morning. That morning when George came by there, Buster was standing out on the gallery; and he said, "George, I would like to talk with you a minute." When I say Buster, I mean this defendant. George said: "What in the hell do you want?" And Buster said: "I don't think you treated me right." And George said: "God damn that; if you don't like it, wait until I go home." And Buster said: "No, I don't want that." And George said: "Come out, and I will fight you fair fisted in the road;" and Buster went out to him. I don't know who hit the first lick. Buster came on in the house when George hit him with his knife, and got his gun and came out; and George just came right onto him, and Buster said, "Don't you come onto me;" and he just kept coming on, and Buster shot. He turned after Buster shot him. I didn't tell you that Buster reached and got a hoe. He never reached and got anything. George didn't hold him there with his knife open and say: "I could kill you Buster." Buster didn't run up behind George after he had started down the road and shoot him." Cross examination. "While Buster was on the porch, he told George he wanted to settle with him and be friends. Buster never attempted to use his gun when he went out. Buster told him to go on away." Re-direct examination. "George was shot and died that day. This was in Lee County, Arkansas."

John Holland: "I saw George Fields before he died. He was shot here (indicating), and he told me he was shot in the

back. He made a statement to me about a half hour before he died. Before he made the statement he called on the Lord to have mercy upon a dying man. When I got to him, I said: 'George, what is the matter?' and he said: 'Buster shot me; I will show you'; and he says, 'I am shot in the back.' It was cold, and I said, 'Boys, pick him up out of this mud and carry him home.' But some of them had beat me there, and had gone after the wagon; and I met the wagon, and went on and telephoned to the officer what had happened. When I got back, I saw that he was dying, and I said: 'George, were you in the fault? and he said: 'I will tell you about it.' He said: 'Five cents was the cause of it all, and I reckon I was not in fault. We had a little fuss last night at Buster's house. I thought it was all settled, and I went home with Caleb Johnson and stayed all night. And as I came by Buster's house the next morning he called me and said he was not satisfied about this fuss last night. And I remarked to him that I thought it was all settled; 'that if nothing else will do but a fight, I will accommodate you.' Buster said: 'That suits me,' and out he come; and we hit a few licks, and I reckon I was too hot for him, and he reached for a hoe. And when he done that I went for my knife, and I cut his hat a little; and I had him by the throat and says, 'Buster, I have the advantage of you, and I could kill you, but I have nothing against you; I like you, and would not hurt a hair of your head.' Then I turned him loose, and the next thing I knew I was shot in the back. And I turned around, and threw up my hands, and said, 'That is all right, Buster; I have not got a God damn thing.' And then he stepped forward and shot me right here.' He was dying so fast I walked off." Cross Examination. "He told me he was shot in the back and in the stomach. Mr. Johnson was there when he made this statement and a few darkies. Johnson is in Mississippi, they say. His eyes looked glassy, and I could see that he was dying. He said Henry reached for a hoe. After the killing Henry said he was not going to run. All I know about the case is what the negro who got shot told me."

Harry Nolen: "Annie Hicks is my aunt. I lived on the next place to her; but I stayed there the night before the killing. The next morning pretty early I had to go and get some black

pepper, and Henry told me to go and get some shells.  Q. ˙ What store did he say go to?  A.  To Mr. Jones's.  Q.  How far is that from where Buster lives?  A.  I don't know.  He said he wanted some No. 3 shot.  He said he wanted the biggest shot; he said No. 3.  I came on back and left the shells, and by the time I got home I heard the shot.  Cross examination.  He did not tell me what he wanted with the shells."

### DEFENDANT'S EVIDENCE.

Isaac Hicks: "When George Fields came up, he called Mr. Buster out.  Then they had a fight.  Then Buster went in the house and got his gun, and when he came out he stopped on the step and shot George Fields.  He just called him, and raised up, and Mr. Fields was on him with his knife in his hand. Fields never said anything as he came towards him."

*William F. Kirby,* Attorney General, and *Dan'l Taylor,* for appellee.

1.  The dying declaration of the deceased as related by witness Holland was undoubtedly admissible.

2.  There was no error in the prosecuting attorney's question to the witness asking if he did not know he would go to the penitentiary if he testified to anything wrong.  The witness was obviously hostile.

3.  The request for new trial on account of newly discovered evidence did not meet any of the requirements of the law.

4.  The court's charge fully presents the law of the case.

HART, J., (after stating the facts.)  Appellant has not filed a brief for the assistance of the court in this case.  Hence we do not know upon what assignments of error he is most confident for a reversal, and have given to each of them such consideration as we think it deserves.

The 5th, 10th, and 11th grounds may be considered together, They are based upon the examination of the witness Hicks as follows:

"Q.  Don't you know what is likely to happen to you to swear something wrong; that you are liable to go to the penitentiary?"  (Objected to by defendant.)

The court: "He has a right to get the truth." ˙ ˙

(The remark of the court was objected to by defendant.)

A. "Mr. Smith has talked to me, but he told me to swear the truth."

The latitude allowed in the examination of a' witness apparently hostile is largely in the discretion of the trial court. The suggestion by the prosecuting attorney that the witness was liable to go to the penitentiary if he swore something wrong was not under the circumstances improper.

The remark of the court in overruling the objection thereto made by defendant's counsel we do not think was an expression by the court of the truth or falsity of witness' statement, but was intended by the court, and no doubt understood by the jury, to mean that it was a proper question in testing the credibility of the witness. The object of the examination of a witness is to get the truth.

2. It was not error to permit the witness, George Holland, to relate the dying declaration of the deceased, George Fields.

Witness testified that he arrived at the scene of the killing about one-half an hour before George Fields died; that Fields was bleeding, and called on the Lord to have mercy upon a poor dying man; that Fields made a statement to him relative to the homicide; that witness left the scene immediately after the statement was made; that Field's eyes were glassy, and he was dying fast. The circumstances detailed by the witness clearly show that the statement was made under apprehension of impending death from the injury received. *Newberry* v. *State,* 68 Ark. 355.

3. The instructions must be considered as a whole. We have carefully considered them. None were asked by the defendant which were not covered by those already given by the court. There are no new principles of law involved in the instructions. They are but applications of well-established principles, and no good purpose can be served by setting them out in full and reviewing them in detail.

4. Appellant contends that the court erred in not granting him a new trial on the ground of newly discovered evidence. Motions for a new trial on the ground of newly discovered evidence are addressed to the sound legal discretion of the presiding judge; and it is only in case of apparent abuse of that

discretion or of injustice that this court interferes. *Anderson* v. *State,* 41 Ark. 229; *Armstrong* v. *State,* 54 Ark. 364. Appellant in his motion for a new trial says that he did not know of this testimony at the time of the trial, and could not by reasonable diligence have known it. But this is not sufficient. Affidavits should be filed with the motion, and it should state the acts done which are denominated reasonable diligence and the facts and circumstances under which the newly discovered evidence came to the knowledge of defendant. *Runnels* v. *State,* 28 Ark. 121; *Campbell* v. *State,* 38 Ark. 498; *Robinson* v. *State,* 33 Ark. 180; *St. Louis S. W. Ry. Co.* v. *Goodwin,* 73 Ark. 528.

We find no prejudicial error in the record, and the judgment is therefore affirmed.