State v. Martineau.

Opinion delivered June 20, 1921.

1. PROHIBITION—NOTICE REQUIRED IN SUPREME COURT.—Crawford & Moses' Digest, §§ 6251, 7023, requiring ten days' notice of application for the writ of prohibition, do not apply to original proceedings in the Supreme Court, whose jurisdiction is derived from the Constitution.

2. PROHIBITION—NOTICE REQUIRED IN SUPREME COURT.—Since there is no statute regulating the practice on original applications to the Supreme Court for the writ of prohibition, and no established rule of the court on the subject, the writ may be issued after reasonable notice of the application; the reasonableness depending upon the circumstances of the case.

3. PROHIBITION—REQUIREMENT OF OBJECTION TO JURISDICTION.—The general rule that objection to jurisdiction must be raised in the inferior court and overruled before the writ of prohibition will issue is subject to certain exceptions.

4. PROHIBITION—REFUSAL TO RULE ON OBJECTION TO JURISDICTION.— Where the State properly objected to the jurisdiction of the chancellor to issue writs of habeas corpus to procure the discharge of men under sentence of death, but the chancellor refused to pass on the question of jurisdiction or on the merits of the case until the Supreme Court passed upon the question of jurisdiction, but did exercise jurisdiction to the extent of enjoining the execution of the sentence of death, his action was tantamount to overruling the objection to jurisdiction.

5. EQUITY—JURISDICTION TO REVIEW CRIMINAL PROCEEDINGS.—Courts of equity have no jurisdiction to review proceedings in criminal cases, or to interfere with such proceedings, either by injunction or by habeas corpus.

6. HABEAS CORPUS—SCOPE OF INQUIRY.—If a petitioner for habeas corpus is in custody under process regular on its face, nothing will be inquired into save the jurisdiction of the court whence the process came.

7. HABEAS CORPUS—FEDERAL STATUTE.—Act of Congress, February 5, 1867 (U. S. Comp. Stat., § 1281), which enlarged the jurisdiction of the United States courts in habeas corpus proceedings, did not enlarge the jurisdiction of the State courts in such proceedings.

8. CRIMINAL LAW—NEW TRIAL FOR NEWLY-DISCOVERED EVIDENCE.—A new trial of a criminal case for newly-discovered evidence, or for

retraction of testimony by witnesses for the State, which in effect is newly-discovered evidence, can not be granted after expiration of the term.

Prohibition to Pulaski Chancery Court; *J. E. Martineau,* Chancellor; writ of prohibition granted.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellants.

*E. L. McHaney, Scipio Jones* and *J. H. Carmichael,* for appellee.

McCULLOCH, C. J. Frank Hicks, Frank Moore, Ed Hicks, J. E. Knox, Ed Coleman and Paul Hall, who had previously been indicted and convicted of the crime of murder, and who were being confined in the State penitentiary awaiting execution of the death sentences, filed a petition for habeas corpus in the chancery court of Pulaski County, praying that they be discharged from custody and from said judgments of conviction. This petition was filed and presented to the chancellor on June 8, 1921, who immediately ordered the issuance of a writ of habeas corpus directed to the keeper of the penitentiary, and the chancellor also ordered the issuance of a writ of injunction restraining the said keeper from executing the death sentences upon said petitioners in accordance with said judgments of conviction and the proclamation of the Governor fixing the date of executions. The writs were issued and made returnable for hearing before the chancery court at 2 o'clock p. m. on June 10, 1921, and E. H. Dempsey, keeper of the penitentiary, was made respondent in the proceeding, and copies of the proceedings and process were served on him and on the Attorney General, who appeared before the chancellor on behalf of the State and the keeper of the penitentiary and made objections challenging the jurisdiction of the chancery court.

A petition has been filed here praying for a writ of prohibition to restrain the chancery court from proceeding in the matter, alleging that it is not within the jurisdiction of that court. The chancery court postponed

further hearing on the matter until a decision of this court could be rendered as to the jurisdiction of that court. The petitioners in the proceeding below, as well as the chancellor, have responded to the present petition, and the former seek to uphold the jurisdiction of the chancery court. Relators presented the present petition to the justices of the Supreme Court on June 9, 1921, for a temporary writ of prohibition pending the presentation of the matter to the court in session, but, on objection being made by respondents to the hearing at that time, it was postponed to the first session of the court on Monday, June 13, 1921, and the cause was set down for hearing on that day.

At the outset of the hearing by this court respondents were opposed to proceeding at this time on the ground that the notice was not given for the length of time required by statute. There is a statute regulating the practice on applications for mandamus and prohibition, which provides that ten days' notice of an application shall be given. Crawford & Moses' Digest, 6251 and 7023. This statute manifestly applies only to proceedings of this nature in courts of original jurisdiction It defines a writ of mandamus, treated in the·chapter, "as an order of a court of competent and original jurisdiction," and defines a writ of prohibition as "an order from a circuit court to an inferior court of limited jurisdiction prohibiting it from proceeding in a matter out of its jurisdiction." Crawford & Moses' Digest, §§ 7021-22. This does not apply to proceedings in the Supreme Court where jurisdiction is derived from the Constitution, but there is no statute regulating the practice. *Prairie C. C. M. Co.* v. *Kittrell,* 107 Ark. 361. This leaves the matter of notice as one to be fixed by rules of this court. This seems to have been the thought in the mind of the court deciding the case of *Ex parte Tucker,* 25 Ark. 567, which arose shortly after the adoption of the Civil Code containing the provision referred to in regard to notice. In the opinion it was said, following the common-law practice, that a writ of prohibition should not be "issued un-

less an opportunity be offered those sought to be prohibited of showing cause against it," but no reference was made to the statute requiring notice. There is no established rule of this court on the subject, and it is a question to be determined in each instance whether reasonable notice has been given. In the present case we concluded that the notice was, under the circumstances, reasonable and the request for further postponement was denied. In fact, there was no contention that the notice was unreasonable if we concluded that the statute referred to did not apply.

Again, it is urged that the remedy should not be awarded under the writ of prohibition for the reason that proper objection had not been made to and overruled by the chancellor to the exercise of jurisdiction. The rule has often been recognized in decisions of this court that prohibition is not available until objection to the wrongful attempt to exercise jurisdiction has been raised in the inferior tribunal and overruled; but exceptions to that rule have been found. *Reese* v. *Steel,* 73 Ark. 66; *Monette Road Imp. Dist.* v. *Dudley,* 144 Ark. 169.

The state of the matter as presented here is this: The chancery court has already exercised jurisdiction by issuing an injunction staying execution of the judgments in the criminal cases and has set the cause for final hearing. Relators made objection to the exercise of jurisdiction, but the chancery court declined to decide either the question of jurisdiction or the merits of the cause until after this court determined the question of jurisdiction. The chancery court on June 10 postponed the hearing indefinitely until this court decides the present case. The effect of the court's attitude is therefore to retain jurisdiction and to further exercise it in due time unless prohibited by this court. The case, therefore, falls within the exceptions stated in *Monette Road Imp. Dist.* v. *Dudley, supra.* Relators are now under restraint of the writ of injunction issued by the chancery court in the attempt to exercise jurisdiction which it is alleged that

court did not rightfully possess, and the failure of the court on the request of the relators to relinquish jurisdiction is tantamount to overruling the objection.

This brings us to the consideration of the main question in the case, whether or not, upon the allegations of the petition filed below, the chancery court possesses jurisdiction, either by injunction or under the writ of habeas corpus, to review the proceedings in which the accused respondents were convicted of the crime of murder or to interfere with the judgments of conviction. The facts are stated in detail and at great length in the petition filed, and include the record of the proceedings in which the accused respondents were indicted, tried and convicted, the record of the appeal to this court, the judgment of affirmance and the opinion of this court, and also the record of the application to the Supreme Court of the United States for a writ of certiorari to review the proceedings.

The accused respondents were indicted by the grand jury of Phillips County for the crime of murder in the first degree, alleged to have been committed by shooting one Clinton Lee. It was charged in the indictment and proved at the trial that the killing of Lee occurred on October 1, 1919, and the indictments were returned by the grand jury on October 29, 1919, and on the 3d day of November, 1919, the trials occurred, Frank Hicks was tried separately and the other five were tried together, and each trial resulted in a conviction of murder in the first degree. When the accused were brought into court and arraigned, they had no attorneys to represent them, and the court appointed counsel, certain members of the Phillips County bar, who represented the accused throughout the trials. There were no exceptions saved during the progress of the trials, but the records show that counsel for the accused cross-examined all of the State's witnesses at length. Before the final adjournment of the circuit court for the term and within the time allowed by law, the accused or their friends employed to represent them the counsel who now appear in their be-

half in the present proceedings, and they filed a motion for new trial, supported by affidavits, which was heard by the court and overruled on December 18, 1919. The motion set forth, as grounds therefor, that the verdicts were contrary to the law and the evidence, and that the court erred in rendering judgment upon the verdict. The motion also set forth at considerable length and in detail the circumstances surrounding the accused at the time of the killing of Clinton Lee and from then up to and throughout the trials of the causes, stating among other things that "at the time of the returning of said indictment and trial said excitement and bitterness of feeling among the whites of said county against the negroes, especially against the defendants, was unabated and still at the height of intensity." It alleged, in substance, that the trials of the accused occurred during a period of great excitement; that the accused were given no opportunity to consult with friends or to employ counsel, and, while they were confined awaiting trial, a mob composed of several hundred armed white men surrounded the jail and courthouse, and that the excitement and feeling against the accused among the white people of the county was such that it was impossible to obtain an impartial jury. The substance of the ground thus pleaded was that they had not been given a fair trial on account of the alleged domination of a mob over the court and jury. Upon overruling the motion for new trial, the circuit court allowed the accused sixty days within which to prepare and file a bill of exceptions, which was filed within the time allowed, and an appeal was duly prosecuted to this court, and after arguments the case was decided by this court affirming the judgment of conviction. All of the assignments of error in the motion for new trial were reviewed in the opinion of this court and decided against the contention of the accused. *Hicks* v. *State,* 143 Ark. 58. Thereafter a petition was presented to the Supreme Court of the United States for a writ of certiorari, which was by that court refused. Since that time the accused respondents have remained

in the custody of the keeper of the penitentiary awaiting the action of the Governor in fixing the date of execution, and the proclamation of the Governor fixing the date of the execution on June 10, 1921, has been suspended by the injunction of the chancery court.

The petition filed below contains a repetition of the allegations contained in the motion for new trial with reference to the excitement prevailing at and before the trial in the circuit court and the alleged domination of mob violence. It also contains a charge, which was also stated in the motion for new trial, that the accused, being negroes, were denied the right and privilege guaranteed by the Constitution of the United States by the exclusion of their race from the grand jury and from the trial jury in Phillips County. The petition recites facts in regard to publications in newspapers and resolutions passed by civic and fraternal organizations prior to the trial and subsequent thereto alleged to be calculated to arouse the people of Phillips County to a high pitch of excitement. It also gives a history of the events which are said to have led up to the killing of Clinton Lee, and declares the innocence of the accused of the crime charged in the indictment. It also alleges that the witnesses introduced by the State in the prosecution of the accused were tortured into giving false testimony, which said witnesses had retracted since the trial. It contains an allegation that prior to the indictment of the accused there had been an investigation by a committee of white citizens in Phillips County for the purpose of ascertaining who were the guilty parties in the homicide which had occurred, and it is stated in the petition that "the entire trial, verdict and judgment against them was but an empty ceremony; that their real-trial and condemnation had already taken place before said 'Committee of Seven,' that said committee, in advance of the sitting of the court, had set in judgment upon their and all other cases and assumed and exercised the jurisdiction of the court by determining the guilt or innocence of those in

jail, had acquired the evidence in the manner herein set out, and decided which of the defendants should be electrocuted and which sent to prison and the terms to be given them, and which to be discharged; that when court convened, the program laid out by said committee was carried through, and the verdict against petitioners was pronounced, not as the independent verdict of an unbiased jury, but as part of the prearranged scheme and judgment of said committee; that in doing this the court did not exercise the jurisdiction given it by law and wholly lost its jurisdiction by substituting for its judgment the judgment of condemnation of said committee.''

The doctrine has been announced by this court that courts of equity in this State are not clothed with jurisdiction to review proceedings in criminal cases or to interfere with such proceedings, either by injunction or under the writ of habeas corpus. *State* v. *Williams,* 97 Ark. 243; *Ferguson* v. *Martineau,* 115 Ark. 317. In *State* v. *Williams,* there was an instance where the chancellor had, after indictment of the accused in the circuit court, issued a writ of habeas corpus for the purpose of allowing bail, and we held that the circuit court acquired exclusive jurisdiction of the cause upon the return of the indictment, and that the chancery court had no jurisdiction to interfere, even to the extent of allowing bail. In disposing of the matter, we said: ''The chancellor has nothing to do with the administration of the criminal laws nor right to interfere with them, neither has he appellate jurisdiction over criminal trials nor appellate or supervisory jurisdiction over the actions of chancellors or circuit judges granting or refusing bail.''

The case of *Ferguson* v. *Martineau, supra,* was one where the chancellor issued an injunction to restrain the keeper of the State penitentiary from executing a death sentence, the writ being issued to suspend proceedings and stay the execution until the sanity of the accused could be inquired into in the probate court. In disposing of the case, in which we held that the chancery court was proceeding beyond its jurisdiction, we said: ''Courts

of equity have to do with civil and property rights, and they have no jurisdiction to interfere by injunction with criminal proceedings. They can not stay processes of courts having the exclusive jurisdiction of criminal matters, where no civil or property rights are involved.''

These two decisions seem to be conclusive of the controversy now before us, and to settle the question that the chancery court is without jurisdiction. But it is insisted that, while such is the effect of our decisions in establishing the jurisdiction of courts, they do not reach to the particular question now presented, which is that, under the ''due process of law'' provision of the Constitution of the United States, any court having authority to issue a writ of habeas corpus possesses jurisdiction to inquire into and review the proceedings in criminal cases for the purpose of determining whether or not the judgment was the result of ''due process of law within the meaning of the Federal Constitution.'' In other words, the contention is that the provision of the Constitution with reference to due process of law and the Federal statutes prescribing the remedies whereby the constitutional guaranty may be enforced must be read into the State laws, so that the prescribed remedies may be afforded in the State courts.

Counsel for respondents rely on the case of *Frank* v. *Mangum,* 237 U. S. 309, as sustaining this contention, but an analysis of that decision and a consideration of the language employed by the learned justice who wrote it shows very clearly that such is not the effect of that decision. The court distinctly recognized the well-established rule at common law and under the British statutes, that on habeas corpus a court was confined in its inquiry to the face of the process of the judgment under which the prisoner was held in custody. The case of *Ex parte Watkins,* 3 Peters 193, was cited where Chief Justice Marshall, in delivering the opinion of the court, followed the common-law rule stated above and decided that a court could not, under habeas corpus, look beyond the face of the judgment of a court of competent juris-

diction to determine whether or not a prisoner was being unlawfully held. This is in accordance with repeated decisions of our own court holding that, if a petitioner for habeas corpus "is in custody under process regular on its face, nothing will be inquired into save the jurisdiction of the court whence the process came." *State v. Neel,* 48 Ark. 283; *Ex parte Barnett,* 51 Ark. 215; *Ex parte Perdue,* 58 Ark. 285; *Ex parte Foote,* 70 Ark. 12; *Ex parte Byles,* 93 Ark. 612; *Ex parte Williams,* 99 Ark. 475.

But the Supreme Court of the United States in the Frank case, *supra,* held that Congress had, by the act of February 5, 1867 (Revised Statutes, §§ 753 *et seq.*), conferred upon the Federal courts express authority to inquire beyond the face of the process or judgment under which a prisoner is being and had "extended the writ of habeas corpus to all cases of persons restrained of their liberty in violation of Constitution or law or treaty of the United States." Further speaking on this subject, the court said: "The effect (Acts 1867) is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the act of 31 Car. II, c. 2, a more searching investigation, in which the applicant is put upon his oath to set forth the truth of the matter respecting the causes of his detention, and the court, upon determining the actual facts, is to 'dispose of the party as law and justice require.'"

The statute referred to does not apply to any courts except to the Supreme Court and circuit and district courts of the United States, and it defines the practice in those courts and the powers of the courts under the remedy afforded by the writ of habeas corpus. The statute does not purport to apply to the courts of the States, and Congress had no authority, had it attempted so to do, to prescribe the powers of the State courts and the practice to be followed in matters within their jurisdictions. The court in the Frank case in effect held that the statute had no application to the State courts, for it said

this: "But repeated decisions of this court have put it beyond the range of further debate that the 'due process' clause of the Fourteenth Amendment has not the effect of imposing upon the States any particular form or mode of procedure, so long as the essential rights of notice and a hearing, or opportunity to be heard, before a competent tribunal are not interfered with."

And again, in speaking of the due process mandate in the Constitution, the court said: "The prohibition is addressed to the State; if it be violated, it makes no difference in a court of the United States by what agency of the State this is done; so, if a violation be threatened by one agency of the State but prevented by another agency of higher authority, there is no violation by the State. It is for the State to determine what courts or other tribunals shall be established for the trial of offenses against its criminal laws, and to define their several jurisdictions and authority as between themselves. And the question whether a State is depriving a prisoner of his liberty without due process of law, where the offense for which he is prosecuted is based upon a law that does no violence to the Federal Constitution, can not ordinarily be determined, with fairness to the State, until the conclusion of the course of justice in its courts."

And again the court said on this subject: "As to the 'due process of law' that is required by the Fourteenth Amendment, it is perfectly well settled that a criminal prosecution in the courts of a State, based upon a law not in itself repugnant to the Federal Constitution and conducted according to the settled course of judicial proceedings, as established by the law of the State, so long as it includes notice, and a hearing, or an opportunity to be heard, before a court of competent jurisdiction, according to established modes of procedure, is 'due process' in the constitutional sense."

What the result would be of an application to a Federal court under the statute referred to and upon the

facts stated in the petition we need not inquire. A perusal of the opinion of the Supreme Court of the United States in the Frank case, *supra,* is, however, illuminative of the subject. The court, after reviewing all of the facts as narrated in the petition and referring to the various proceedings in the State courts, said: ''The narrative has no proper place in a petition addressed to a court of the United Sattes except as it may tend to throw light upon the question whether the State of Georgia, having regard to the entire course of the proceedings, in the appellate as well as in the trial court, is depriving appellant of his liberty and intending to deprive him of his life without due process of law. Dealing with the narrative, then, in its essence, and in its relation to the context, it clearly appears to be only a reiteration of allegations that appellant had a right to submit, and did submit, first to a trial court and afterward to the Supreme Court of the State, as a ground for avoiding the consequences of the trial.''

The court further said that ''this familiar phrase, 'due process of law,' does not mean that the operations of the State government shall be conducted without error or fault in any particular case, nor that the Federal courts may substitute their judgment for that of the State courts, or exercise any general review over their proceedings, but only that the fundamental rights of the prisoner shall not be taken from him arbitrarily or without the right to be heard according to the usual course of law in such cases.''

Further discussion would seem to be useless. It was not contended in the argument here that there is any other charge in the motion upon which relief could be granted, except the one to the effect that the trial court was dominated by a mob, which suspended the functions of the court and prevented a fair trial. There are no other facts in the petition which would warrant a review of the judgment of the circuit court of Phillips County. The allegations with regard to newly discovered evidence

and the retraction by the State's witnesses, which is, in effect, an allegation of the discovery of new evidence, affords no grounds for a review of the judgments of conviction, for there is no provision in the laws of this State for the granting of a new trial after the lapse of the term on the ground of newly discovered evidence. *Howard* v. *State*, 58 Ark. 229; *Thomas* v. *State*, 136 Ark. 290; *Satterwhite* v. *State, ante* p. 147.

It follows that the chancery court is without jurisdiction to proceed, and the writ of prohibition will therefore be granted, and the writ of habeaus corpus as well as the injunctive order issued by the court will be quashed.