LINK *v.* STATE.

Crim. 3960

Opinion delivered September 30, 1935.

*John C. Sheffield*, for appellant.

*Carl E. Bailey*, Attorney General, and *Guy E. Williams*, Assistant, for appellee.

JOHNSON, C. J. Appellant was indicted by the grand jury of Phillips County for the crime of murder in the first degree committed by the shooting and killing of one Dr. Miller, and from a manslaughter conviction upon which a five-year sentence was imposed he appeals to this court.

The State relied for a conviction upon the dying declaration of deceased, corroborated by confessions and voluntary statements of appellant to the sheriff of Phillips County. The dying declaration of the deceased was to the following effect: ''I, Dr. W. F. Miller, after having been told by Dr. J. B. Ellis that I am going to die and realizing that I am going to die, I make and publish this statement as my dying statement.

''Last night a woman that was in a family way walked by and Mr. R. B. Link made an insulting remark about the lady, and that started an argument. Mr. Link and I live at the same hotel. The shooting took place this morning in the hall of the Kendall Hotel at Marvell. I walked by the door of Link's room and Link walked out and shot me. I had no weapon. I was unprepared for any fight. Mr. Link said nothing before he shot me with a pistol. I know of no reason why he would shoot me. I never threatened Mr. Link. He shot me with an automatic pistol. He fired only one shot. I make this statement as my dying statement in the presence of C. W.

Straub, F. F. Kitchens, Dr. J. B. Ellis, Mrs. O. M. Broods on this, the 30th, day of March, 1935.

"Dr. W. F. Miller."

Mr. Kitchens, the sheriff of Phillips County, testified that he discussed the killing with appellant the day the crime was committed, and appellant told him that he shot Dr. Miller because he had been worrying him for some time, etc.

Appellant's first contention for reversal is that the testimony on behalf of the State was insufficient as a matter of law to support a verdict of manslaughter. The testimony above set out is amply sufficient, if believed by the jury, to support the verdict of manslaughter, and this suffices to dispose of appellant's first contention. The mere fact that the dying declaration of deceased was contradicted by other testimony affords no reason for us to interfere with the jury's verdict, as this presents only a conflict in the testimony which has been settled adversely to appellant's contention. *Blevins* v. *State,* 182 Ark. 109, 30 S. W. (2d) 851; *Arnett* v. *State,* 188 Ark. 1106, 70 S. W. (2d) 38.

Appellant next urges that the jury's verdict, to-wit: "We, the jury, find the defendant guilty of manslaughter, the penalty to be fixed by the court. [Signed] G. H. Vineyard, Foreman," is insufficient in law to support the consequent judgment entered thereon for voluntary manslaughter.

This exact contention was urged before this court in *Fagg* v. *State,* 50 Ark. 506, 8 S. W. 829, and we there disposed of the contention by saying: "The verdict did not designate the degree of manslaughter, or assess the punishment. The duty of fixing the penalty, devolved therefore upon the court. Mansf. Dig., § 2308. On conviction of murder the statute requires the degree of the offense to be found by the jury. Mansf. Dig., § 2284; *Thompson* v. *State,* 26 Ark. 323; *Ford* v. *State,* 34 *Id.* 602. It is not so as to manslaughter. It is only necessary that the court should have a certain guide to the intention of the jury. Verdicts receive a reasonable construction in order to reach the jury's meaning, and, when

that is found, they are enforced as though the intention was express. *Strawn* v. *State,* 14 Ark. 549. Viewing the verdict in this case in the light of the evidence and the court's charge, the conclusion is reasonable, if not irresistible, that the jury intended a conviction of voluntary manslaughter. The court had charged them specifically upon that offense, and had made no mention of involuntary manslaughter. If they knew there was such a grade of homicide, it is not probable that they understood that the defendant could be convicted of it in this prosecution. A verdict of involuntary manslaughter would have been inappropriate to the evidence, and the jury would have been unmindful of their duty to have returned such a verdict. In the absence of an expression to the contrary, a presumption of an intention to violate a duty is not indulged against a juror more than any other officer. The evidence certainly warranted a verdict of murder in the first degree; that the jury did not intend to acquit is shown by the verdict. If it be conceded that the verdict ought not properly to have been for voluntary manslaughter, that affords no reason for indulging the presumption that the jury intended a greater wrong than they have expressed.''

Viewing the verdict in the light of the testimony heretofore set out, the conclusion is irresistible that the jury intended a conviction of voluntary manslaughter.

It is unfortunate that a man of appellant's age, namely 85 years, is required to serve a term in the State penitentiary as retribution for a crime against the laws of the State, but such is the status of this record, and we have no alternative in the matter.

No error appearing, the judgment is affirmed.