WALLS AND MITCHELL *v.* STATE.

Crim. 4055

Opinion delivered October 4, 1937.

*John Owens* and *Tom Kidd,* for appellants.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

MEHAFFY, J. Appellants were convicted in the Pike circuit court of the crime of robbery, and their punishment fixed at three years in the state penitentiary. The case is here on appeal.

There are but two questions argued by the appellants. It is first contended that the court erred in ad-

mitting in evidence the transcribed testimony of Betty Lou Bryant, given by her in the preliminary hearing. There was an examining trial by the justice of the peace, and Betty Lou Bryant was present and testified, and the defendants were present and represented by an attorney. This testimony was transcribed by the stenographer and introduced in evidence over the objection of appellants.

Mrs. Verdeeba LeLongy testified that she worked for the prosecuting attorney, and on April 22, 1937, took the testimony in the justice of the peace court of Thompson township, Pike county, Arkansas, in a case in which the state of Arkansas was plaintiff and Altus Walls and Roy Mitchell defendants, and took the testimony of Betty Lou Bryant. Witness was sworn before she testified. The pages from 1 to 17 and about half of 18, is the truly transcribed testimony of Betty Lou Bryant in the cause.

The testimony was then offered and appellants' attorneys objected to the introduction of it, first, because the Constitution provides: accused should be confronted with witnesses and they are here on trial and not confronted with witnesses; that it was not a proper showing that witness is out of the jurisdiction of the court. The court then asked if counsel for appellants appeared at the hearing before the justice of the peace and cross-examined this witness. It was then stated that John Owens, lawyer for appellants, cross-examined Betty Lou Bryant, whereupon the court overruled the objections and admitted the testimony.

The evidence shows that Betty Lou Bryant lived in Spartanburg, South Carolina; that some days prior to the examination in the justice of the peace court she left Spartanburg, South Carolina, and arrived at Murfreesboro about 5:30 or 6:00 o'clock on Sunday; that she was on her way to Fort Worth, Texas. After the trial in the justice of the peace court, on the same day, the sheriff testified that he served a subpoena on Betty Lou Bryant warning her to appear in the Pike circuit court, and that she is not here. The sheriff did not know

where she was, but said she left Murfreesboro the next day after the trial.

The fact that she was on her way to Fort Worth, Texas, and did not live in the state of Arkansas, and no one knew where she was, was a sufficient showing to make her evidence taken before the examining magistrate competent in the trial in the circuit court. As to whether the foundation was sufficient was a matter in the discretion of the trial court, and he did not abuse his discretion in admitting the testimony.

Initiated Act No. 3, 1936, expressly provides that when a witness has been examined in the magistrate court and his testimony taken, as provided in said act, the transcript of his testimony shall be admitted in evidence upon the trial of the defendant, for any offense arising out of the criminal transaction for which he is held, either on behalf of the state or of the defendant, if for any reason the testimony of the witness cannot be obtained at the trial, and the court is satisfied that the inability to procure such testimony is not due to the fault of the party offering the transcript in evidence.

The act, also, provides that this evidence may be introduced when the former witness is dead, beyond the jurisdiction of the court, has become insane since the former trial or examination, or when, for any reason, the former witness may not be available. But long before the adoption of this initiated act, this court had repeatedly held that under circumstances similar to the circumstances in this case, secondary evidence was admissible.

This court recently said: "This court is committed to the doctrine that secondary evidence is admissible in the same case between the same parties if the witness who testified originally is beyond the jurisdiction of the court, without the procurement or connivance of the party seeking to introduce the testimony, and if the address of the witness was not or could not, by reasonable diligence, have been obtained in time to take his deposition, provided the adverse party had an opportunity to cross-examine the witness when his original evidence

was given; and it is within the sound discretion of the trial court to determine whether the proper foundation had been laid to admit the secondary evidence of an absent witness." *Pine Bluff Co.* v. *Bobbitt,* 174 Ark. 41, 294 S. W. 1002; *Clinton* v. *Estes,* 20 Ark. 216; *Shackelford* v. *State,* 33 Ark. 539; *McTighe* v. *Herman,* 42 Ark. 285; *Ry. Co.* v. *Henderson,* 57 Ark. 402, 21 S. W. 878; *Vaughan* v. *State,* 58 Ark. 353, 24 S. W. 885; *Kansas & Texas Coal Co.* v. *Galloway,* 71 Ark. 351, 74 S. W. 521, 100 Am. St. Rep. 79; *Wimberly* v. *State,* 90 Ark. 514, 119 S. W. 668.

It is true the Constitution provides that the accused shall be confronted with the witnesses against him; but it has been uniformly held by this court that the testimony of a witness taken at an examining trial, where the defendant was present and had the opportunity to cross-examine the witnesses, may be given in evidence on the trial of the defendant, where such witness at the time of the trial is dead, or is out of the jurisdiction of the court, or where his whereabouts cannot be learned, without any violation of the constitutional right of the accused to be confronted with the witnesses against him. *Williams* v. *State,* 156 Ark. 205, 246 S. W. 503.

If initiated act No. 3, 1936, had never been adopted, still the secondary evidence in this case would have been proper, as this court has frequently held.

It is contended by appellants, however, that they were denied the privilege of cross-examining the witness, and for that reason the evidence was incompetent. When witness, Betty Lou Bryant, was being cross-examined in the examining court, she testified that she went to Gainsville the first night from Spartanburg, then to Atlanta, and from there to Sanford, and had dinner that day. Appellants' attorney asked, "How much did you spend for that meal?" The court sustained objection, and attorney for appellants stated: "We offer to show by witness that she left Spartanburg, South Carolina, and went from there to Gainsville, Georgia, and then to Atlanta, Georgia, from Atlanta to some other place in Georgia, and that she had only $22 when she left Spar-

tanburg, South Carolina, and that on the way down here she spent all the money she left Spartanburg, South Carolina, with." No other objection was made, and no request to cross-examine witness, except to show that she had spent all her money.

She, herself, testified that she had $22 when she left Spartanburg. There could of course, be no reason to prove this on cross-examination, because it was undisputed. She further testified that she had $10 when she got to Murfreesboro, bought some beer and sandwiches, and had $8.50 left. Not only did she testify that she had the money when she got to Murfreesboro, but all the witnesses that knew anything about the matter at all, testified that she bought beer and sandwiches and had the money to pay for them.

Dorothy Van Winkle testified that she was working in Cox's Cafe in Murfreesboro and that Betty Lou Bryant purchased sandwiches and beer and that both Altus Walls and Roy Mitchell were in the cafe at the time and they were talking to the girl. She further testified that Roy asked her for a date and she told him she could not go. She had her money tied up in her handkerchief and paid for what she purchased. She bought three or four bottles of beer, two sandwiches and one coke. Roy Mitchell was there and had no money and wanted to buy beer on credit.

Margaret Jackson testified that Betty Lou Bryant and Walls and Mitchell were in the Jackson Cafe and that she paid for the beer that they all drank. She said that Betty Lou Bryant gave her two one-dollar bills and had them changed; bought the boys two beers each and got the change back.

Roy Mitchell, the appellant, testified that he went to Jackson's Cafe and that Betty Lou Bryant bought beer, and he, also, testified that he did not have any money.

Altus Walls, appellant, testified that he saw Betty Lou Bryant in Murfreesboro on the 18th, and saw Roy at Cox's Cafe; that she was drinking beer and talking.

He, also, testified that he saw her buy beer, but she did not buy any sandwiches.

It, therefore, appears from all the evidence that she had money which she was spending. There could be no possible prejudice in the court's failure to permit appellants to cross-examine this witness for the purpose of showing that she had spent all her money, and they did not request permission to cross-examine her for any other purpose.

The appellants were entitled not only to be confronted with the witness against them, but to cross-examine her. They did cross-examine her at length, and did not at any time claim that they wanted to cross-examine her further for any purpose, except to show that she had spent all her money before she got to Murfreesboro.

Appellants contend that the evidence is not sufficient to sustain the verdict; and that, therefore, the court erred in not directing a verdict. There is no dispute about appellants being in the cafes with Betty Lou Bryant, and when she was arrested by the officer and he told her that she was drunk and talking too much, and he would have to take her to jail, the appellants then agreed to take her out of town, and she was turned over to them. Up to this time there is no dispute in the evidence.

Betty Lou Bryant testified that about 8:30 o'clock, Altus Walls and Roy Mitchell, appellants, carried her off and went about three miles, Walls driving the car and going north; that they took her from the night marshal and said they would take her to some rooming house; they started to drive and she began to beg them to let her out and they would not do it; they drove on out in the woods and parked the car and Roy told her to get out; that he was going to do what he wanted to, and Mitchell said, "If she don't, we'll kill hell out of her." That she refused to get out and Roy pulled her out, threw her on the ground, took off some of her clothing and hit her in the eye; that he told her that if she did not do what he wanted her to do, she could walk to town; that he then threw her in a mud-hole and took her money

from her, $8.50; she had the money in her handkerchief; she testified that the spot under her eye was where Roy hit her; they drove off and left her, and she walked back to town. When she got to town she asked a man how to get out of town and the marshal came up and put her in jail; when Roy threw her on the ground, he held her there for about five minutes; she was fighting and he was trying to get to her. During all this time Walls was sitting in the car and never said anything else after the first statement.

She testified that she was 19 years old and was going to her uncle's in Fort Worth; had been working as a waitress in a restaurant; that the marshal started to jail with her and the boys got in the car and took her and she went with them to keep from being put in jail.

A. L. Henderson, the night marshal, testified that he saw Betty Lou Bryant at the cafe and the appellants were there; they were drinking beer and he asked the girl where she lived and she told him in North or South Carolina; he told her she was going to get drunk; that he was the marshal, and she said she was going to her room; that he told her if she was not going to leave the streets he would put her in jail, and Walls asked witness to let him take her to Glenwood. She got in the car with them and Walls was driving; saw Walls and Mitchell later that night, asked them if they had been to Glenwood, and they said no, that the girl had gone to a farm house and gone to bed. After they came back he saw Betty Lou Bryant and put her in jail; her clothes were dirty from the hips down, and she had bruises under her left eye.

Dorothy Van Winkle testified that Betty Lou Bryant was in the cafe and the appellants Walls and Mitchell were in there, and that she bought beer and sandwiches, and had her money tied up in a handkerchief and paid for what she purchased. Walls and Mitchell said at that time that they did not have any money and Roy wanted to buy beer on credit.

Margaret Jackson testified that when appellants came back they purchased two small chilis and paid her

twenty-five cents and she gave them a nickel back. They were in there before Betty Lou Bryant left, and did not make any purchases; she paid for the beer that they all drank. She had money and was spending it. She bought the boys two beers each.

The evidence of the appellants was in conflict with some of this evidence. In testing the legal sufficiency of evidence, it must be viewed in the light most favorable to the state. *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. (2d) 50; *Smith* v. *State, ante* p. 264, 106 S. W. (2d) 1019; *Turnage* v. *State,* 182 Ark. 74, 30 S. W. (2d) 865; *Link* v. *State,* 191 Ark. 304, 86 S. W. (2d) 15; *Clayton* v. *State,* 191 Ark. 1070, 89 S. W. (2d) 732.

The evidence is sufficient to sustain the verdict, and the judgment is affirmed.