DELANEY *v.* STATE.

4473                                             207 S. W. 2d 37

Opinion delivered January 12, 1948.

*John W. Baxter,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. On the night of January 13, 1947, David Gough, a man about 80 years of age, was brutally killed in his home as a result of choking and beating. His mutilated body was not discovered until more than 36 hours after his death. For the death of Gough, appellant Troy Delaney was convicted of murder

in the first degree; and in this appeal presents the assignments herein discussed.

I. *The Sufficiency of the Evidence.* On the morning of January 13, 1947, Troy Delaney was released from the Washington county jail, where he had been confined on a charge of drunkenness; and at the time of his release he had $5.50 in cash. He spent the greater part of that day—and some of his money—in drinking beer; he said he drank 21 or 22 bottles. After dark he met Sallie Parker, a woman 55 years of age. They drank some beer, and then left the drinking place; later, they met some unidentified men who gave them a bottle of whiskey, a large portion of which was consumed by Delaney.

At the jury trial Delaney claimed loss of memory from the time he drank the whiskey until he awakened the next morning in company with Sallie Parker in the school house at Lowell, a settlement several miles away. Sallie Parker testified that, after Delaney drank the whiskey, he went with her to the house of David Gough, where Delaney robbed and killed Gough; and that, in so doing, Delaney got blood on his shirt and soot on his face, when he knocked over the stove in the struggle with Gough. Sallie Parker also told how she and Delaney went to a filling station, called a taxicab, and then went to the Lowell school house and spent the night.

There were other witnesses who testified that when Delaney was at the filling station, he had soot on his face and blood on his shirt. The spending of money in the filling station, and the paying of the taxi fare to Lowell, and several additional matters of corroboration were also shown by witnesses other than Sallie Parker. Significant evidence concerned a comb: the deputy sheriff of Washington county testified that, when Delaney was in jail on January 12, 1947, the deputy gave him a certain blue comb, and that the same comb was found hanging on the shirt of the body of the deceased David Gough. When Delaney was arrested, he had a newspaper clipping naming himself as the murderer. Also, concealed in his bed was a letter he had written to his mother, referring to the death of Gough.

In addition to the denial of his guilt, Delaney introduced evidence seeking to show that a man named Curtis Wages had murdered Gough, and that Sallie Parker had first identified Wages as the murderer and later had changed her story in order to pin the guilt on Delaney. The credibility of Sallie Parker's testimony was for the jury. It is possible that Wages might have been with Delaney and Sallie Parker, and might have participated in the murder, but such facts would not absolve Delaney.

Without reciting all of the evidence, we conclude that it was amply sufficient to take the case to the jury on the question of Troy Delaney's guilt. Furthermore, there is no evidence that the verdict was the result of passion or prejudice.

II. *The Degree of the Crime.* It is strenuously insisted that there is no evidence of premeditation, and that we should, therefore, reduce the crime to murder in the second degree. There are two answers to this contention: (a) There was testimony that the murder was committed in the act of robbery. The court charged the jury that murder committed during the commission of a felony is murder in the first degree. To that instruction there was no objection. In fact, there were no objections to any of the instructions given by the court. (b) Deliberate and specific intent could have been found to exist from the brutal nature of the killing. *Rosemond* v. *State*, 86 Ark. 160; 110 S. W. 229, and authorities there cited.

III. *Sallie Parker as an Accomplice.* The appellant insists that Sallie Parker was an accomplice, and that her testimony must be corroborated. The answer is twofold. The trial court submitted to the jury the question of whether Sallie Parker was an accomplice. If the jury found that she was not an accomplice, then her testimony did not have to be corroborated. On the other hand, even if she were an accomplice, her testimony was corroborated, as we have previously indicated.

IV. *Newly Discovered Evidence.* In the amended and substituted motion for new trial, duly presented to

the court, appellant claimed that he had five items of newly-discovered evidence. These items related to evidence of contradictory statements made by Sallie Parker; and evidence tending to show that Curtis Wages was the murderer. Also, the defendant stated that, since the trial before the jury, he had recovered from his loss of memory, and could testify as to his acts. He did so testify in the hearing on the motion for new trial.

We have repeatedly held that a motion for new trial on the ground of newly-discovered evidence is addressed to the sound discretion of the trial court. *Armstrong* v. *State,* 54 Ark. 364, 15 S. W. 1036; *Huckabee* v. *State,* 174 Ark. 859, 296 S. W. 716; *Jones* v. *State,* 196 Ark. 176, 116 S. W. 2d 610; *Sutton* v. *State,* 197 Ark. 686, 122 S. W. 2d 617. The ruling of the trial court on a motion for new trial on the ground of newly-discovered evidence will not be disturbed by this court on appeal in the absence of an abuse of discretion. *Osborne* v. *State,* 96 Ark. 400, 132 S. W. 210; *Russell* v. *State,* 97 Ark. 92, 133 S. W. 188; *Thompson* v. *State,* 130 Ark. 217, 197 S. W. 21; *French* v. *State,* 205 Ark. 386, 168 S. W. 2d 829. The trial court heard all of the witnesses offered by the defendant on the five items of newly-discovered evidence. The testimony heard by the trial court is before us in the record, and we have carefully examined it; we reach the conclusion that there was no abuse of discretion in overruling the motion for new trial.

V. *The Motion of December 12, 1947.* The defendant was convicted on April 29, 1947. The motion for new trial, as previously referred to, was overruled by the court on June 25, 1947, and the defendant sentenced on that day. All of the afore-mentioned proceedings were during the April term of the Washington Circuit Court. On December 12, 1947, (a day of the October, 1947, term) the appellant presented to the Washington Circuit Court an additional motion for new trial, listing eight other items of newly-discovered evidence. This last-mentioned motion was properly stricken by the circuit court. There is no provision allowing a motion for new trial in criminal cases, on account of newly-discovered evidence, to be

filed after the expiration of the term at which the judgment of conviction was rendered. *Satterwhite* v. *State,* 149 Ark. 147, 231 S. W. 886; *State* v. *Martineau,* 149 Ark. 237, 232 S. W. 609.

Finding no error, the judgment of the circuit is in all things affirmed.