JACKSON v. STATE.

Opinion delivered February 26, 1912.

1.  JUROR—DISQUALIFICATION BY OPINION.—A juror is not disqualified in a criminal case by reason of a "fixed" opinion based upon hearsay testimony or mere rumor, which opinion it would take evidence to remove, where he states that he can go into the jury box and disregard such opinion, and that he has no bias or prejudice for or against the accused.   (Page 23.)

2.  EVIDENCE—DYING DECLARATION.—Where a witness testified that he reduced the dying declaration of decedent to writing the best he could but that he was not able to get the whole statement in writing, it was not error to permit him to testify orally as to what the declaration was, without requiring the production of such written statement. (Page 26.)

3.  SAME—DYING DECLARATION—WRITTEN STATEMENT.—Where a written statement of a dying declaration is not read to the declarant, nor signed by him, it is not competent as original evidence.   (Page 26.)

4.  HOMICIDE—THREATS.—It was not error, in a prosecution for murder, to refuse to permit the defendant to prove uncommunicated threats alleged to have been made by a person for whom defendant mistook the man whom he killed.   (Page 27.)

5   SAME—THREATS.—Where the court permitted the defendant on trial for murder to prove that threats made by the person for whom he mistook the deceased had been communicated to him, it was not prejudicial error to refuse to permit him to go into further details as to such threats.   (Page 27.)

6.  INSTRUCTION—SINGLING OUT FACT.—It was not error for the court to refuse to single out a fact, such as the absence of motive on part of the accused, and direct the attention of the jury to it.   (Page 27.)

Appeal from St. Francis Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*Carmichael, Brooks & Powers,* for appellant.

1.   The statement of the deceased to the coroner, Todd, was not admissible because it does not appear that it was given in the consciousness of imminent dissolution.   Wigmore on Ev., § § 1439, 1440, 1441, 1442; 75 Ark. 142; 68 Ark. 355; 63 Ark. 382; 58 Ark. 47; 2 Ark. 229.   The fact that it was sworn to added nothing to its admissibility.   Dying declarations are only admissible for the purpose of identifying the person who committed the murder and the circumstances surrounding the cause of the act.   Wigmore on Ev., § 1434.   While it was for the court to determine whether or not the mind of the declarant

was in such condition as to make of it a dying declaration, it was for the jury to find the truth of the declaration; and, such being the case, the jury were entitled to have the statement just as it came from him, and of this the written statement was the best evidence.   19 S. W. 907; 172 Ill. 582; 20 So. 727, 728; 48 La. Ann. 1309; 3 Words & Phrases, 2298; 6 Pac. 56; Wigmore on Ev., § 1450; 82 Ark. 327; 20 Ark. 36.

2.   The court in holding that the jurors Fisher and Fussell were competent, thereby forcing him to challenge them peremptorily, erred to appellant's prejudice.   69 Ark. 324.

3.   The court erred in excluding evidence of threats made by McIntosh, the purpose of such testimony being to show the state of mind of appellant at the time he did the shooting. This state of mind it was important to show for two reasons: (1) to show a motive or lack of it, and (2) it explains the state of mind of defendant and shows why he shot deceased.   Wharton on Homicide, (3 ed.) § 359 p. 574; 54 Ark. 601; 67 Ark. 600, 603; 84 Ark. 121.

4.   The evidence fails to show motive, either directly or indirectly; it does not show malice, premeditation and deliberation, but it does show that appellant committed the act in the belief that he was acting under circumstances which appeared to justify his acting in his own proper self-defense.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1.   The testimony of the witness Todd, giving the substance of the dying declaration, was properly admitted.   It was for the trial court to decide from the evidence before him whether or not the declarant believed, at the time he made his statement, that death was impending, and the court's finding on that point will not be disturbed unless there was an abuse of discretion.   38 Ark. 495; 58 Ark. 47; 68 Ark. 355; 88 Ark. 579.   It was for the jury to determine the credibility of the statement.   81 Ark. 417.   The testimony was admissible as given orally, notwithstanding the deceased's statement was taken down, in part at least, in writing.   82 Ark. 324; 84 Ark. 99; 95 Ark. 172.

2.   The jurors, Fisher and Fussell, were competent. 66 Ark. 53; 79 Ark. 131.

3. There was no error in excluding evidence of threats. Uncommunicated threats are only admissible as tending to throw light on who was the probable aggressor, *where that question is in dispute.* 82 Ark. 595; 69 Ark. 148; 72 Ark. 436. If the undisputed evidence shows that the person making the threats was not the aggressor, such threats are not admissible. 84 Ark. 121.

As to communicated threats made by McIntosh, since the bill of exceptions shows that the jury were told of these threats, and appellant made no effort to make the testimony with reference thereto more explicit, he is in no position to complain. 101 Ark. 439; 73 Ark. 407.

McCULLOCH, C. J. Appellant was convicted of murder in the first degree for killing one Noah Powell, the killing being admitted, and the only defense is that it was done under circumstances which were sufficient to cause appellant to believe, without negligence, that it was necessary for him to slay in self-defense.

The principal ground urged for reversal of the cause is that the court erred in its ruling as to the competency of two jurors. One of them, Fisher, stated, on his examination, that a nephew of deceased lived near him, and told him about the case, but was not a witness, and all that was said was hearsay. When asked if he had formed any opinion, from what that person told him, as to the guilt or innocence of appellant, he answered: "Yes, sir, if a man could consider his talk facts." He stated further that he understood at the time that the nephew of deceased was not present at the difficulty, and was speaking from hearsay, and that he (the juror) could go into the jury box and disregard the opinion which he had and try the defendant according to the law and the evidence as delivered to him there, and he also stated that he had no bias nor prejudice for or against the defendant. On cross examination by appellant's counsel, he stated that, at the time the nephew undertook to relate the facts, he did not understand that the latter purported to know the facts in the case except by hearsay. He was asked if the opinion he had formed would "take strong evidence to remove it," and "if it was a fixed opinion in his mind," to which he replied in the affirmative. The court ruled that the juror was competent.

Another juror, Fussell, made substantially the same statements, except what he had heard was rumor, without mentioning the names of any persons to whom he had talked, and he also stated that he had no bias nor prejudice against the defendant, and that whatever opinion he then had was based on rumor and would not control him in the face of the evidence adduced at the trial.

Appellant challenged both the jurors and during the course of making the jury exhausted all of his peremptory challenges.

Taking the whole of the statements of these two jurors, the effect is that they had formed opinions based merely upon rumors, that they had no bias nor prejudice for or against the accused, and that they could try the case entirely in accordance with the evidence adduced at the trial. Stress is laid by counsel upon the fact that the jurors, in response to questions propounded to them on cross examination, said that the opinion, though based on rumor, was fixed, and they insist that this statement, of itself, necessarily implied bias, which is not contradicted by the positive statements of the jurors that they had no bias or prejudice. Very little in the discussion of this question can be added to Judge RIDDICK'S two opinions in the cases of *Hardin* v. *State*, 66 Ark. 53, and *Sullins* v. *State*, 79 Ark. 131, where the law on this subject is exhaustively treated. Those decisions, with others, place this court firmly on the ground that a certain amount of discretion must be indulged to the trial court in passing upon the state of mind of a juror under examination, and that an opinion based merely upon rumor does not, of itself, disqualify a juror. The use of the word "fixed" is merely a relative term, which may or may not be used by different persons intending to convey the same idea, and does not necessarily imply fixed bias. The following language of Judge RIDDICK in the Hardin case is appropriate, where he said:

"Now, it is a matter of common knowledge that we all form opinions from rumor, and from reading newspapers, which we retain until we hear another version of the matter, or until time, or forgetfulness, or something, has removed them from our minds. If one, called for examination as a juror, should have an opinion of that kind concerning the case, however slight the

importance he attached to it, he might yet truthfully say that. if put on the jury, it would remain on his mind until he heard something to the contrary; in other words, that it would take evidence to remove it.   It does not by any means follow that he would, if placed on the jury, be influenced by such opinion, or allow it to take the place of evidence."

Nor is it different where the juror uses a word of emphasis by saying that his opinion was "fixed"; for, after all, if it was an opinion or impression which required some testimony to remove, it would be to that extent fixed in his mind, and the question, after all, would be whether it was based upon purported statements of facts by witnesses or merely upon rumor.   It matters not to what extent the opinion is fixed upon the mind of the juror, if it is based entirely upon rumor, which may be effaced by forgetfulness or by sworn testimony given from the witness stand, and not based upon the statements of witnesses.   Then the opinion, however firmly fixed, is not a disqualifying one.

The killing occurred in the town of Widener, in St. Francis County, on the night of July 6, 1911.   Several witnesses were present and related the circumstances.   The deceased, Noah Powell, had ridden up to the gate of one Taylor, and stopped there, and asked Taylor for a match.   Taylor went into the house to get the match, and defendant rode up, and, after having called out, "Hello," several times, spoke to Powell, and said:   "I have been waiting for you."   Powell replied:   "You are not waiting for me, because you know who I am," whereupon appellant said:   "You are mighty damn right I do," and commenced shooting.   Witnesses stated that Powell did not attempt to do anything to appellant, and had no opportunity to do so, and fell off his horse soon after he was shot.   One of the eye-witnesses stated that, immediately after the shooting, Powell asked appellant what he shot him for, and appellant replied:   "I would not have shot you if you hadn't shot at me three times."   Deceased then said:   "Dink, I never thought you would ever harm a hair of my head;" and appellant replied:   "Well, you shot at me first."   Deceased was shot three times, once in the back, once in the hand, and once through the lower lobe of the liver, either one of which shots in the body, the testimony tended to show, was sufficient to produce death.

Appellant claimed that he thought, when he fired the shot,

that deceased was one McIntosh, with whom he had had a difficulty, and that when he rode up, the person who he took to be McIntosh made demonstrations as if to draw a pistol. He testified that McIntosh had taken his wife from him, and threatened to kill him, and that he had a warrant for McIntosh, and was looking for him at the time he saw deceased, Powell. He said that he thought Powell was McIntosh, and, as before stated, when he called to the man to surrender, the latter attempted, as it appeared to him, to draw a pistol. He testified also that he borrowed the pistol from the marshal of the town, and asked that officer to go with him to arrest McIntosh, but that the officer refused to do so, but gave him his pistol.

The State offered in evidence what purported to be the dying declaration of deceased. It was proved 'that the declaration was made at the immediate approach of death, when deceased realized that the end was near. The coroner was present, and states that he administered the oath to deceased before he made the declaration, but this is not important, as under the law it is the solemnity of the immediate approach of death, and not the oath, which gives verity to the declaration. The declaration of deceased was that he met appellant a short time before the killing, and that they passed some remarks which he took to be in the way of a joke, and that he (deceased) went further down the road and stopped at Taylor's to get a match, and appellant came up, and he asked appellant if he knew him, and appellant replied, "Yes," and then told him he was going to shoot him, and proceeded to do so. The witness stated that he reduced the statement to writing the best he could as it was made by the declarant, but that he had not been able to get the whole statement in writing. He did not produce the statement or refer to it in his testimony, further than to state that he had taken down part of the declaration.

The law on this subject is fully discussed by this court in *Mitchell* v. *State*, 82 Ark. 324; and the ruling of the trial court in permitting the witness to testify from his recollection as to the whole of the declaration, whether reduced to writing or not, and in declining to require the witness to produce the writing, was not in conflict with the principles we have announced in the case above cited. It does not appear that the writing was

read to the declarant and signed by him, and it was not com-
petent as original evidence.

Error of the court is assigned in refusing to allow the de-
fendant to testify as to threats made by McIntosh. The court
refused to permit him to prove uncommunicated threats, and
also refused to permit him to testify as to the details of the com-
municated threats made by McIntosh, but the court did allow
him to state that threats of McIntosh against him had been
communicated to him by several parties. Uncommunicated
threats are never admissible except for the purpose of showing
who was the aggressor in the difficulty, if there is a conflict in
the evidence upon that point. Of course, threats made by
McIntosh could not have had any bearing upon the question
as to whether Powell was the aggressor, and therefore they were
not competent in any view of the case. Communicated threats
are admissible for the purpose of showing the state of mind
of the accused at the time of the commission of the homicide, and
for the purpose of shedding light upon his interpretation of the
conduct of the deceased where there is other evidence tending
to show that the accused had reason to believe that his life was
in danger. But in this case the court permitted defendant to
testify as to the fact that the threats of McIntosh to kill him had
been communicated to him, that he was in great fear of McIn-
tosh, that he went to serve a warrant and fired the shots because
he thought it was McIntosh in a threatening attitude, attempt-
ing to draw a pistol on him. We can not see that any prejudice
resulted from the court's refusal to permit him to go into further
details as to the threats of McIntosh.

There are assignments of error as to the refusal of the court
to give instructions, but upon a careful examination of the record
we find that the court gave proper instructions upon all the
grades of homicide, and that no error was committed in re-
fusing the particular ones asked by appellant.

The court refused to give the following instructions re-
quested by appellant: "The court charges and instructs the jury
that, if the evidence in the case fails to show any motive on the
part of the accused, that is a circumstance in favor of his inno-
cence, which the jury are to consider, together with all the other
facts and circumstances, in making up their verdict." It was
not error for the court to refuse to single out a fact, and make it

the subject of a separate instruction.   *Ince* v. *State,* 77 Ark. 418; *Hogue* v. *State,* 93 Ark. 316.

It is earnestly contended that the evidence is not sufficient to sustain the conviction of murder in the first degree, but upon careful consideration of the record we conclude that the evidence is abundantly sufficient for that purpose.

Finding no error in the record, the judgment will be affirmed, and it is so ordered.