## LOMAX v. STATE.

### Opinion delivered July 14, 1924.

1. CRIMINAL LAW—MOTION FOR NEW TRIAL—INDEFINITENESS.—A motion for new trial upon the ground of testimony "which was incompetent, irrevelant and immaterial to the issues involved," not naming witnesses nor pointing out evidence, was too indefinite to present any question for review on appeal.

2. HOMICIDE—INSTRUCTION AS TO BURDEN OF PROOF.—In a prosecution for murder, an instruction that, if defendant killed deceased, the burden was upon him to establish self-defense, unless the State's evidence showed it, was not erroneous, in the absence of a specific objection.

3. HOMICIDE—ABSTRACT INSTRUCTION.—In a murder prosecution refusal of defendant's instruction that, if deceased fell against his knife, causing his death, defendant would not be guilty, was not erroneous where there was no evidence on which to base such instruction.

4. HOMICIDE—SELF-DEFENSE—INSTRUCTION.—In a prosecution for murder, an instruction that, if defendant voluntarily entered into a combat and killed deceased, he could not take advantage of a necessity brought about by his own unlawful act, was not objectionable as assuming that defendant unlawfully and wrongfully killed deceased.

5. HOMICIDE—INSTRUCTION AS TO SELF-DEFENSE.—In a murder case, an instruction that, if defendant was the aggressor, he could not plead self-defense unless he first, in good faith, undertook to withdraw from the combat and avoid the danger and avert the necessity of the killing, was not erroneous, where the evidence would have sustained a finding that either one of the parties was the aggressor.

Appeal from Mississippi Circuit Court, Blytheville District; *George E. Keck,* Judge; affirmed.

*E. E. Alexander* and *Orville Zimmerman,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock, Darden Moose* and *J. S. Abercrombie,* Assistants, for appellee.

HART, J. Walter Lomax prosecutes this appeal to reverse a judgment and sentence of conviction against him for voluntary manslaughter. His punishment was fixed by the jury trying him at six years in the State Penitentiary.

It is first insisted by counsel for the defendant that the court erred in allowing certain questions to be asked and answered by the defendant on cross-examination.

We need not set out this testimony, because the assignment of error with regard to it is too indefinite. The only ground in the defendant's motion for a new trial upon which an assignment of error with regard to the admission of testimony could be based is the following: "Because the court erred in admitting testimony which was incompetent, irrelevant, and immaterial to the issues involved in said cause."

This court has frequently held that a motion for a new trial on the ground that the court erred in admitting evidence on the part of the defendant, without naming the witnesses or pointing out the evidence, is too general, and does not present any question for review on appeal. *Edmonds* v. *State,* 34 Ark. 720; *Western Union Tel. Co.* v. *Duke,* 108 Ark. 8, and cases cited; and *Black* v. *Hogsett,* 145 Ark. 178.

The next assignment of error is that the court erred in giving instruction No. 21, which reads as follows:

"You are instructed that, the killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the defendant, unless, by the proof on the part of the prosecution, it is sufficiently manifest that the offense only amounted to manslaughter, or that the accused was justified or excused in committing the homicide."

No specific objection was made to this instruction. The instruction follows the language of the statute, and, in the absence of a specific objection, it only amounts to telling the jury that, if it should find that the defendant killed the deceased, then the burden of proof was upon him to establish self-defense, unless the evidence for the State showed it. *Wilson* v. *State,* 126 Ark. 354, and *Sheppard* v. *State,* 160 Ark. 315.

The next assignment of error is that the court erred in refusing to give instruction No. 7 requested by the defendant. The first part of the instruction deals with the subject ·of drunkenness as a defense to crime, and there is no objection to the instruction in this respect. The instruction, however, concludes with the following:

"Or, should you find from the evidence that, while defendant so held his open knife in his hand as afore-said, if you so find, that deceased, in fighting the defendant, rushed or fell against said knife, causing his injury and death, as shown by the evidence, you will then acquit the defendant."

There was no testimony upon which to predicate such an instruction. To have given it to the jury would only. have served to confuse and mislead them. The proof on the part of the State, briefly stated, is that the defendant, the deceased, and two companions took an extensive automobile ride in Mississippi County, Arkansas, on the night of the 8th of March, 1924. They all drank freely of moonshine whiskey, and the defendant and the deceased both became very drunk. The defendant was thirty-five and the deceased twenty-two years of age. They were warm friends, and the defendant had lived for a time at the home of the deceased's mother. One of them, it does not appear from the evidence which one, demanded that the car should stop so that they might fight. The car was stopped, and the deceased got out of it first. The defendant immediately followed him, and in a short time came around and thrust his hand through the curtain on the front seat of the automobile. He had an open knife in his hand, and the occupants of the front

seat took it away from him. The driver then got out, and called the deceased a few times. He failed to answer, and they drove on without him. On the next morning the body of the deceased was found where he had got out of the car, and it was discovered that the deceased's throat had been cut in the fray, and that he died as the result of it a few minutes afterwards. A great quantity of blood was found on his clothes and body, and it seems that he must have bled to death a short time after he was cut in the neck.

According to the testimony of the defendant, he was so drunk that he did not remember having cut the deceased, or even of having a fight with him. In fact, he says that he did not remember anything after he got out of the car. When he returned to the car, there was a bruise on his lips, which had evidently been inflicted by the deceased. This brief summary of the evidence shows that the question of the deceased's falling on an open knife in the hands of the defendant was not in the case. The parties engaged in a mutual combat, and the jury, by returning a verdict of manslaughter, evidently thought that the fight was the result of their drunken quarrel, and not on account of any previous ill-will or malice towards each other. This view is strengthened by the fact that the deceased and the defendant had been warm friends and associates. There was room for dispute about which one was the aggressor, but there was no testimony from which a fair legal inference could have been drawn that the deceased was killed as the result of accidentally falling upon the knife in the hands of the defendant. The place where he was cut, the severity of the blow, and all the attending circumstances show that this view of the matter could not be supported by any fair legal inference from the evidence.

It is well settled in this State that courts are not required to give instructions upon questions about which there is no evidence, and thus divert the minds of the jury from the real issues in the case. In this connection it may be stated that the court gave the jury proper

instructions on the question of drunkenness as a defense to crime.

It is next insisted that the court erred in giving instruction No. 26, which reads as follows:

"Gentlemen, this instruction that I gave you a few minutes ago, which had in it, 'if the defendant sought out the deceased for the purpose of bringing on the difficulty,' I am withdrawing from you about 'seeking out the deceased for the purpose of bringing on the difficulty,' for there is no testimony to that, that he sought out the deceased, and that part of the instruction would be abstract. The instruction would read, 'if you find from the evidence in this case, beyond a reasonable doubt, that the defendant provoked or brought on, or voluntarily entered into, the difficulty, and, when he did so, killed his assailant, he cannot shield himself on the plea of self-defense; he cannot take advantage of the necessity produced by his own unlawful or wrongful act.'"

It is contended by counsel for the defendant that the clause "he cannot take advantage of the necessity produced by his own unlawful or wrongful act," unqualifiedly tells the jury that the defendant acted unlawfully and wrongfully in killing the deceased.

We cannot agree with counsel in this contention. The instruction, when considered as a whole, does not assume any fact, but it leaves it to the jury to find whether the defendant voluntarily entered into the difficulty, and also whether or not he killed the deceased. The instruction simply tells the jury that, if he voluntarily entered into the difficulty and killed the deceased, he cannot avail himself of the plea of self-defense, and cannot take advantage of the necessity brought about by his own unlawful act. In other words, it tells the jury that, if the killing resulted from a voluntary quarrel and mutual combat entered into by the parties, this would be a wrongful act, and the defendant could not avail himself of the plea of self-defense.

The next assignment of error is that the court erred in giving instruction No. 20, which reads as follows:

"You are further instructed that, if you find from the evidence in this case, beyond a reasonable doubt, that the defendant was the aggressor, then you are told that he cannot shield himself on the plea of self-defense unless he first, in good faith, undertook to withdraw from the combat and avoid the danger and avert the necessity of the killing."

It is claimed that this instruction is erroneous because there is no evidence that the defendant was the aggressor. We cannot agree with counsel in this contention. The deceased and the defendant were on the back seat of the automobile. Their companions on the front seat testified that they began quarreling, and that one of them told the driver of the car to stop it; that they were going to fight. The deceased got out first, and then the defendant got out. The driver then saw the defendant reel back in the light, as if he had received a blow. They both disappeared from his sight, and then the defendant came around to the side of the car and said, "Where is the son of a bitch?" At the same time he thrust his hand through the curtains of the car, and had an open knife in it. The knife was taken away from him.

Under this state of the record the jury might have inferred that either one of the parties was the aggressor. Hence there was no error in submitting this question to the jury. The court gave proper instructions on the various degrees of homicide and on the question of reasonable doubt. As above stated, it also gave proper instructions on the question of drunkenness as a defense to homicide.

We find no prejudicial error in the record, and the judgment will be affirmed.