ADCOCK *v.* STATE.

Opinion delivered September 23, 1929.

*Will Steel* and *Pratt P. Bacon,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

HART, C. J., (after stating the facts). It is earnestly contended by counsel for appellant that the circuit court erred in refusing to continue the case on account of the illness of one of his attorneys. The record shows that both of the attorneys for the defendant represented him at his examining trial. After the indictment was found, the case was set for trial at an adjourned term of court. Both of his attorneys were present, but one of them represented that he was ill with appendicitis, and had been in bed all the day before. The court refused to continue the case, and both the attorneys actively participated in the trial. The record shows that the defendant was ably and skillfully represented at the trial, and that no injury

resulted to him on account of the illness of one of his attorneys. Under these circumstances it cannot be said that the circuit court abused its discretion in overruling the defendant's motion for a continuance. *Holmes* v. *State,* 144 Ark. 617, 224 S. W. 394, and *C. H. Robinson Co.* v. *Hudgins Produce Co.,* 138 Ark. 500, 212 S. W. 305.

It is next contended that the court erred in permitting Jim Patterson to testify that, immediately after they left the scene of the shooting, Minor Patterson began to pray for the defendant, Horace Adcock. Witness said that they had not gone a hundred yards when the praying commenced. The record shows that, when objection was made to the testimony, the court stated that he would overrule the objection for the present. The witness drove home with his uncle, and telephoned for a doctor. The physician came, and at once carried Minor Patterson to a hospital at Texarkana. At about 7:30 o'clock in the evening the deputy prosecuting attorney came and took down his dying statement, after Patterson had declared that he knew he was going to die. He did die the next morning at about 7:30 o'clock. The physician who attended him testified that he was shot on the right side, between the eighth and ninth ribs, and that the bullet lodged in the muscle. The physician said that the bullet was calculated to produce death. It is within the province of the court to hear the circumstances under which the alleged dying declarations were made and to determine whether they are admissible. After they are made, it is within the province of the jury to weigh them and the circumstances under which they were made, and give them such credit upon the whole evidence as they may think they deserve. *Jones* v. *State,* 88 Ark. 579, 115 S. W. 166; *Robinson* v. *State,* 99 Ark. 209, 137 S. W. 831; *Rhea* v. *State,* 104 Ark. 162, 147 S. W. 463; *Stewart* v. *State,* 148 Ark. 540, 230 S. W. 590; and *Lowmack* v. *State,* 178 Ark. 128, 12 S. W. (2d) 909.

In these cases the court has held that the inference that the declarant was under a sense of certain and

speedy death may not only be found from what the declarant stated on the subject, but also from the character of the wound itself and the fact that he died within a short time, in connection with the other attendant circumstances.

In the first place, the trial court admitted the testimony of the witness to the effect that the deceased had prayed for the defendant without first ascertaining whether the proper foundation had been laid for admitting the testimony as a dying declaration, but that this ruling was temporarily made. The record shows that soon thereafter the trial court did hear testimony on this point, and made an affirmative finding to the effect that a proper foundation for a dying declaration had been laid. He did not rule out the testimony referred to, and it is fairly inferable that he considered it admissible as a dying declaration. It was admissible for that purpose as a declaration showing the state of mind of the deceased to the defendant at the time of the shooting. Hence we do not think that the court erred in admitting this testimony.

It is next insisted that the court erred in allowing witnesses to testify that, on the next day after the shooting, they examined the scene, and allowed them to describe the condition of the ground with reference to the wagon tracks across the road and tracks of the team hitched to the wagon. It is claimed that, the shooting having occurred on a public road, the condition of the ground easily changed, and that the testimony could shed no light as to the appearance of the ground at the time of the shooting. This was a matter for the jury. The evidence showed that the shooting occurred on a country road which was not traveled much. The jury was the judge of the credibility of the witnesses, and could tell from their descriptions of the ground whether or not there had been sufficient passage of other teams and vehicles to materially change the condition of the ground from that which existed at the time of the shooting.

It is next insisted that the court erred in admitting the oral testimony of the witness Cook as to the dying declaration, which had been reduced to writing. It is insisted that the written declaration is the best evidence. The court only admitted the testimony of Cook to show that the dying declaration was made, written down, and signed by the deceased at a time when he thought he was going to die, and that his death was immediate and impending. Under the authorities above cited, the testimony of Cook was necessary to lay a proper foundation for the dying declaration.

It is next insisted that the court erred in allowing Dr. Allen to testify as to the location of the bullet, because an X-ray picture had been made, and the X-ray photograph would be the best evidence of the location of the bullet. We do not agree with counsel in this contention. The physician had practiced medicine for more than twenty years, and was competent to testify not only as to the location of the wound, which he could do from actual observation, but also as to the location of the bullet, which he could know by probing in the wound. The X-ray photograph would only show the location of the bullet. If the body of the deceased showed no place of exit of the bullet, it was necessarily lodged somewhere within the body. The exact location was not material, because the point of entrance could be observed, and the physician testified that the wound was calculated to produce death, and it actually did produce death on the next morning after the deceased was shot. Hence no prejudice could possibly have resulted to the defendant from the admission of this testimony.

Finally, it is insisted that the court erred in giving State's instruction No. 9, which reads as follows:

"The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the accused, unless, by proof on the part of the prosecution, it is sufficiently manifest that the offense only amounted to manslaughter, or that

the accused was justified or excused in committing the homicide, provided you find from the evidence on the whole case, beyond a reasonable doubt, that the defendant is guilty."

In this connection it may also be said that the court gave the defendant's instruction No. 6, which reads as follows:

"In this case the killing is admitted, and the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless, by proof on the part of the prosecution, it is sufficiently manifest that the offense only amounts to manslaughter, or that the accused was justified or excused in committing the homicide; and you are further instructed, however, that upon the whole case the burden is on the prosecution to establish defendant's guilt beyond a reasonable doubt."

It is insisted that the instructions are conflicting. We do not think so. The killing was admitted by the defendant while he was on the stand, and his theory was that it was done in necessary self-defense. The court properly gave to the jury § 2342 of Crawford & Moses' Digest, and qualified it by telling the jury that the burden of the whole case rested upon the State. The fact that the defendant admitted the killing, and that it was established by the undisputed proof to have been done by the defendant, did not relieve the State from establishing the guilt of the defendant by evidence beyond a reasonable doubt, because in any event the burden of proof on the whole case rested upon the State. *Tignor v. State,* 76 Ark. 489, 89 S. W. 96; *Parsley v. State,* 148 Ark. 418, 230 S. W. 587; and *Sheppard v. State,* 160 Ark. 315, 254 S. W. 657.

We find no reversible error in the record, and the judgment is therefore affirmed.