CLEMENTS *v*. STATE.

4141 133 S. W. 2d 844

Opinion delivered November 6, 1939.

*R. C. Waldron, Hugh U. Williamson, .W. A. Jackson*
and *Roy Richardson,* for appellant.

*Jack Holt, Attorney General,* and *Jno. P. Streepey,*
Assistant Attorney General, for appellee.

HOLT, J. Appellant, Marvin Clements, was charged
in an information in the western district of Lawrence
county, with the murder of Carson Higginbotham, and
upon a trial was convicted of murder in the second de-
gree and his punishment fixed at five years in the state
penitentiary.

He appeals to this court and assigns twelve differ-
ent grounds upon which he relies for a reversal.

We consider them in the order presented.

It is first contended that the trial court erred in admitting in evidence the purported written dying declaration or statement of deceased, on the ground that no proper foundation for its introduction had first been laid.

A dying declaration constitutes an exception to the rule rejecting hearsay evidence. To warrant its admission, it must be shown that the statement or declaration was made by the deceased under the belief or apprehension of impending death. The theory of the law being that one who realizes or believes that he is about to step into eternity will speak the truth. Deceased's realization of impending death, at the time of making the, statement, may be gathered from the statement itself and any other facts and circumstances surrounding him at the time, nor is it essential that deceased should apprehend immediate dissolution. The dying statement objected to is as follows:

"Statement of Carson Higginbotham relative to the shooting at Ravenden, Arkansas, March 19, 1939, at Ravenden, Arkansas.

"I, Carson Higginbotham, do make this my last dying statement, and declaration. I realize that I am on the verge of death, and I want the facts and truth known.

"I came to Ravenden about 5:30 p. m., Monday afternoon. I stopped in front of my funeral home and I saw Marvin Clements sitting in front of my store. I got out of my car and spoke to Clements and said, 'What do you say, Marvin.' He got up and said, 'I'm going to kill you.' I said, 'Please don't do that.' He pulled his gun and commenced to shoot at me. I ran around the car and tried to get away from him. I was unarmed, and had no gun or pistol about me. I did not put my hand in my hip pocket or any other pocket to draw a gun. I asked him to not shoot me, and he kept crowding on me and said again, 'I'm going to kill you.' The first shot struck my hand, and about the fourth shot hit me in the back. I fell as I was trying to get around the car and he kept firing while I was begging

him not to kill me. Had it not been for John Hanni he would have killed me there on the scene.

"I had nothing to do with his being discharged by the postal department. I did not make a statement or affidavit to anyone insisting on his dismissal. I did make an affidavit two or four years ago in an attempt to help him hold his position. I have loaned him money on numerous occasions for the purpose of securing counsel to represent him in holding his job.

"I have here given the true facts. Carson Higginbotham. Witnesses: Don Penn, Agnes Barre, R. N. Filed this 28 day of March, 1939, W. H. Davis, J. P."

The record reflects that at the time this statement was executed by the deceased he was in a hospital in a serious condition from bullet wounds, inflicted by appellant, and that he died within forty-eight hours of the statement.

The nurse who attended him constantly, testified that she was present when the dying declaration was executed by the deceased and that he asked his brother who wrote it out for him to let him read it over before he signed it and signed it in her presence. She further testified that in her opinion he was in a serious condition at the time and realized it, and further: "Well, he said that he was pretty sick, and says: 'I am going to have a hard time if I make it.' . . . He was in a very serious condition at the time he made the statement. . . . The statement was made on Thursday afternoon, and he died at 12:24 on Sunday morning."

Before this dying declaration could be offered a preliminary question is presented to the trial court for his determination as to whether it is admissible at all. If he concludes that it is admissible, it then goes to the jury for whatever weight the jury may give it.

The rule is well stated in *Freels* v. *State*, 130 Ark. 189, 196 S. W. 913: "Whether declarations are made under a sense of impending death so as to render them admissible as dying declarations is a preliminary question for the trial court, and its finding will not be disturbed if there is evidence to support it. *Fogg* v. *State*, 81 Ark. 417, 99 S. W. 537; *Jones* v. *State*, 88 Ark.

579, 115 S. W. 166; *Robinson* v. *State*, 99 Ark. 208, 137 S. W. 831. In determining the question the court should consider all the facts and circumstances surrounding the declarant at the time the declarations were made, such as the character of the wound, the declaration of the deceased himself that he could not live, and the fact that he died shortly afterwards. *Robinson* v. *State, supra; Cantrell* v. *State*, 117 Ark. 233, 174 S. W. 521. The question as to the admissibility of such declarations is for the court to determine; the weight and credit to be given them is for the jury. *Rhea* v. *State*, 104 Ark. 162, 147 S. W. 463.''

In the late case of *Goynes* v. *State*, 184 Ark. 303, 42 S. W. 2d 406, this court said: ''It is the province of the court to determine whether a dying declaration was made under circumstances that it would justify the court in admitting it, and the weight to be given to the statement is to be determined by the jury. *Sanderlin* v. *State*, 176 Ark. 217, 2 S. W. 2d 11; *Adcock* v. *State*, 179 Ark. 1055, 20 S. W. 2d 120.''

In *Evans* v. *State*, 58 Ark. 47, 22 S. W. 1026, this court held (quoting headnote): ''A statement by one who has been shot respecting the circumstances under which the wound was inflicted is admissible as a dying declaration, in a prosecution for the killing of such person, if made at a time when he did not expect to survive the injury, although this was five or six days before his death and at a time when he did not apprehend immediate dissolution.''

The record further reflects that the statement in question was dictated by deceased to his brother, who typed it and was then signed and executed by deceased and contained the statement: ''I realize that I am on the verge of death, and I want the facts and truth known.''

We think the statement itself and the testimony of the nurse clearly make it admissible in evidence and that no error was committed by the court in allowing it to go to the jury.

Appellant next contends the court erred in refusing to permit him to impeach the purported dying declaration of deceased.

The first instance in the testimony to which appellant complains is in the examination of one J. H. White by whom he sought to prove a certain conversation with deceased in which he claimed deceased had made a statement concerning appellant. This testimony is as follows: "Q. Do you know anything about any threats that were made by Carson Higginbotham against the life of Marvin Clements, if you do, tell the jury? A. I do not. Q. You don't know of any made by Carson? A. That is what I understood you to say. Q. Did you ever talk to Carson Higginbotham any about Marvin? A. Yes, sir. Q. Tell what he said with reference to Marvin, about his job. A. It wasn't about his job (interrupted)."

Upon objection to this testimony by the state, the court ruled: "Unless you can show threats against the life of Clements by Higginbotham, it would not be competent. The objection is sustained."

The next testimony about which appellant complains because the trial court sustained the state's objection to its admission is that of Chili Childers and is as follows:

"Q. Did you ever hear Carson Higginbotham make any threats against Marvin Clements? A. No, I didn't. Q. Did you ever know of him threatening to get his job?"

The next is the testimony of Dr. C. C. Ball, which is as follows: "A. Yes, there was a bad feeling between them. Q. How long had that feeling existed, if you know? A. It had existed since the school election in 1937. And they had aggravated Mr. Clements badly. Q. Aggravated him how? A. Well, trying to get his job and fooling with him. Objection by the state because he said 'they.' Q. You know the feeling between him and Carson Higginbotham was bad? A. It was a bad feeling. Q. And had been since that school election? A. Yes, sir, it sure had. Mr. Richardson: Can he say how he knew it, Judge? The Court: No. The Witness: I could tell you how I knew it. Mr. Richardson: Well, the court says you can't tell it."

We think the mere reading of the above testimony shows that it did not tend to contradict or impeach the dying declaration in question and that no error was committed by the trial court in ruling it incompetent.

Appellant further contends that the court erred in refusing to allow him to introduce certain affidavits filed in Washington by various parties who sought to cause appellant to lose his job, and a certain letter of deceased's brother which accompanied the affidavits. Appellant sought the introduction of these affidavits for the purpose of contradicting that part of the dying declaration which declared that he, deceased, had nothing to do with trying to cause appellant to lose his job.

Upon objection by the state to the introduction of these affidavits, and its insistence that only affidavits be received in evidence of those persons making them who had testified in the case, as affecting their credibility, the trial court sustained the state's objection, and ruled that he would permit the introduction of any affidavits made by witnesses who had testified in the case for the purpose of testing their interest and credibility.

The record reflects that photostatic copies of the affidavits of two witnesses, who testified in the case, were permitted to be introduced by appellant. After a careful examination of these affidavits, we think no error was committed by the trial court in its rulings in this connection.

None of the affidavits was made by deceased though he notarized all of them except one. The fact that he notarized them, however, would certainly be no contradiction of the dying declaration in question or that part of it wherein he stated that he had nothing to do with attempting to cause appellant to lose his job. Certainly these affidavits made by persons who were not present in court and available for cross-examination by the state, and who did not testify in the case, were properly rejected as incompetent testimony.

It is also our view that the court properly limited the introduction of affidavits to those two witnesses who were actually present and subject to cross-examination and properly limited the effect of such affidavits as show-

ing the bias or interest of such witnesses in testing their credibility.

It is next contended by appellant that the trial court erred in holding that threats made by third parties against appellant were incompetent.

The record reflects that the court instructed the jury that threats might be considered in determining who was the probable aggressor at the time of the fatal encounter, giving the rule concerning communicated and uncommunicated threats, limiting such threats to those made by deceased about appellant or those made by appellant against deceased.

The court permitted appellant to introduce testimony to the effect that deceased had made threats against the life of appellant and that this was communicated to appellant, but refused to permit appellant to introduce testimony as to threats made against appellant by third parties in the presence of deceased. We think no error was committed in this ruling of the court.

In *Jackson* v. *State,* 103 Ark. 21, 145 S. W. 559, this court said: "Of course, threats made by McIntosh could not have had any bearing upon the question as to whether Powell was the aggressor, and, therefore, they were not competent in any view of the case."

We do not think that threats made by third parties against appellant could have any possible bearing upon the question as to who was the probable aggressor in this case.

Complaint is also made by appellant about the refusal of the trial court to permit witness, J. R. Marriott, to testify that a third person borrowed a gun with which to kill deceased. The record reflects that no exception was made or preserved by appellant to the court's action in sustaining the state's objection to the introduction of this testimony. The same is true with reference to the testimony of appellant himself about the same thing, therefore, we find no error here.

Complaint is also made because the trial court refused to allow Dr. C. C. Ball to go more into detail after testifying that "they had aggravated appellant badly trying to get his job, and fooling with him." In the

conduct of a trial the court is accorded wide latitude and discretion and unless abuse is clearly shown in the exercise thereof, we do not interfere with the action of the trial court unless some mandatory provision of the law has been violated. *Spear* v. *State,* 184 Ark. 1047, 44 S. W. 2d 663.

Appellant next complains of the manner in which the trial court conducted the trial and especially about three different events, or incidents, occurring during the trial, which he alleges were prejudicial to him.

Briefly, these incidents complained of are: First, one of appellant's attorneys objected to one of the state's attorneys prompting a certain witness, and again in telling him what to say and with shaking his head at the witness and causing him to answer, no. The court's ruling was, "Well, he wasn't telling him what to say, he was just trying to keep him from telling a conversation." The third instance was the refusal of the court to allow appellant to show that he had been visited in jail after the killing by the brother of the deceased and that deceased's brother had made certain statements to him. We cannot see how any possible prejudice to appellant could result from the court's ruling in this connection for whatever statement deceased's brother might have made at the time could throw no light on the killing of deceased which had occurred before the alleged statement was made.

We do not think the court erred in any of the above rulings. Certainly the matters about which appellant complains were trivial and could not have influenced the jury in arriving at a verdict.

As this court said in *Penton* v. *State,* 194 Ark. 503, 109 S. W. 2d 131: "The tendency of present-day decisions is to regard as immaterial those matters which cannot conceivably militate to the prejudice of a defendant, where such construction does not, in the circumstances of the case, run counter to the law, nor conflict with rules of reason."

Appellant next complains because the trial court refused to permit him to cross-examine one Frank Stratton more at length. Witness had been asked by appel-

lant whether or not he had gathered up the witnesses for the state and prompted them as to what to say. In answer, witness stated: "I have talked to others, yes, but as to prompting them or forming a line of evidence, I didn't do it." Witness denied that he had attempted to find out from each witness what he was going to say, but admitted talking to them. The court sustained objection to further cross-examination on the theory that "this witness stated he had not taken any part in it." We think clearly that no prejudice is shown here by the ruling of the court and that no abuse of discretion is shown.

It is next contended by appellant that the trial court erred in overruling his supplemental motion for a new trial. The record reflects that this supplemental motion was based upon appellant's statement that he was surprised at the testimony of one Marriott, a witness for the state. It appears that this witness testified without objection as to threats made by appellant against deceased.

In this motion for a new trial, appellant alleged that he was surprised at this testimony on the ground that after the trial two reputable citizens informed him that Marriott had stated after the trial that he had not heard appellant make any threats and knew nothing about the real facts.

The record shows that other witnesses testified that appellant had threatened to kill deceased prior to the killing. The effect of the alleged newly discovered evidence set out in the motion would be merely to contradict Marriott, and, we think, the court properly overruled this supplemental motion for a new trial and that no abuse of the court's discretion is shown.

The rule relative to motions for a new trial on the ground of newly discovered evidence has been stated in *Hix* v. *State,* 189 Ark. 688, 691, 74 S. W. 2d 966, as follows: "The testimony set out in this motion is either cumulative of other testimony heard at the trial (*Dillard* v. *State,* 174 Ark. 1179, 298 S. W. 27) or tending to impeach such testimony (*Hayes* v. *State,* 169 Ark. 883, 277 S. W. 36)."

And again in *Bourne v. State,* 192 Ark. 416, 91 S. W. 2d 1029, this court said: "A supplemental motion for a new trial, on the ground of newly-discovered evidence, was filed and overruled. Such a motion addresses itself to the sound legal discretion of the trial court, and this court will not reverse except where an abuse of such discretion is shown or an apparent injustice has been done. *Ward v. State,* 85 Ark. 179, 107 S. W. 677; *Young v. State,* 99 Ark. 407, 138 S. W. 475; *Cole v. State,* 156 Ark. 9, 245 S. W. 303. No abuse of discretion is shown." *Hulen v. State,* 196 Ark. 22, 115 S. W. 2d 860.

It is next insisted that the trial court erred in permitting Asa Ezell, appellant's witness, to testify while he was being cross-examined by the state, as to what deceased said about his purpose in borrowing witness' pistol.

The record reflects that on direct examination witness had stated that deceased had borrowed his pistol a week before the killing and same was returned to him after the killing. The only inference, it seems to us, to be drawn from these circumstances was that deceased had borrowed the pistol to carry out his threat to kill appellant. We think the court properly permitted the state to elicit from the witness the explanation which had been given to him by deceased as to why he desired the pistol, and certainly it was proper cross-examination.

In *Tiner v. State,* 109 Ark. 138, 158 S. W. 1087, the court said: "It is well settled that cross-examination should be permitted as to all matters developed on direct examination, and it may be extended into all circumstances surrounding or affecting the transaction which the witness has detailed in his direct examination."

Appellant also contends that the evidence was not sufficient to sustain the conviction. We cannot agree. We are of the view, after a careful examination of this entire record, that there is an abundance of testimony of a substantial nature to warrant the jury's finding, and where there is substantial testimony present, the jury's finding is conclusive here.

In *West v. State,* 196 Ark. 763, 120 S. W. 2d 26, this court said: ". . . it is also a well settled rule

that the evidence at the trial will, on appeal, be viewed in the light most favorable to the appellee, and if there is any substantial evidence to support the verdict of the jury, it will be sustained. *Daniels* v. *State,* 182 Ark. 564, 32 S. W. 2d 169; *Walls & Mitchell* v. *State,* 194 Ark. 578, 109 S. W. 2d 143; *Humphries* v. *Kendall,* 195 Ark. 45, 111 S. W. 2d 492.''

It would unduly extend this opinion to set out, in detail, the evidence relied upon by the state. However, when summed up and considered in its most favorable light to the state, we think it shows that appellant shot deceased down as he was running away from him, and after he had been hit fatally, walked up to the deceased and fired two shots into his body while he was lying on the ground. While this testimony was contradicted, the jury elected to take the state's view. *Burnett* v. *State,* 197 Ark. 1024, 126 S. W. 2d 277.

Complaint is made by appellant on the giving, and refusal to give, certain instructions.

Contention is made that the court erred in giving instruction No. 17 dealing with the plea of self-defense made by appellant. This instruction tells the jury that this plea of self-defense would not be available to appellant unless it found that the deceased was the aggressor, and further that if appellant were the aggressor and provoked the difficulty he could not shield himself behind the plea of self-defense until he had attempted to withdraw from the difficulty. Similar instructions have been approved many times by this court. See *Lomax* v. *State,* 165 Ark. 386, 264 S. W. 823. We think no error was shown in the giving of this instruction.

Complaint is again made that the court erred in refusing to give an instruction offered by appellant concerning his right to stand his ground and not retreat. We are of the view, however, that no error is shown here for the reason that this requested instruction is fully covered by instruction No. 14 which the court gave on the question of self-defense.

Appellant complains because the trial court gave instruction No. 18 relating to threats by either appellant or deceased for the purpose of determining the probable

aggressor. He claims that the instruction is contradictory within itself and that it presents the issue of who was the probable aggressor and also the issue of the justification of the accused.

An examination of the record in this connection discloses that only a general objection was made to the giving of this instruction by appellant, no specific objection was made or pointed out, and we think the complaint comes too late. We are also of the view that the instruction itself is not inherently wrong.

Finally appellant complains about the giving of instruction No. 22. This instruction relates to the effect and weight that should be given to the dying declaration of deceased which the court had permitted in evidence. After carefully reviewing this instruction in the light of the evidence as presented in the record, we think no error was committed in giving it, and that it was justified under the authority of the case of *Parker* v. *State*, 169 Ark. 421, 275 S. W. 758.

After a careful consideration of this entire record, we are of the view that no prejudicial errors are presented and the judgment is accordingly affirmed.